COLORADO STATE BOARD OF MEDICAL EXAMINERS, Petitioner/Cross–Respondent,

v.

Omar LOPEZ–SAMAYOA, M.D., Respondent/Cross–Petitioner.

No. 93SC454.

Supreme Court of Colorado, En Banc.

Dec. 19, 1994.

Rehearing Denied Jan. 17, 1995.

Gale A. Norton, Atty. Gen., Stephen K. ErkenBrack, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Merrill Shields, Deputy Atty. Gen., Linda L. Siderius, First Asst. Atty. Gen., Robert A. Holden, Asst. Atty. Gen., Regulatory Law Section, Denver, for petitioner.

Yu, Stromberg, Huotari & Cleveland, P.C., Frederick Y. Yu, Rebecca G. Gannon, Susan B. Levy, Denver, for respondent.

Justice VOLLACK delivered the Opinion of the Court.

We granted certiorari to review a judgment of the court of appeals in *Lopez–Samayoa v. Colorado State Board of Medical Examiners*, 868 P.2d 1110 (Colo.App.1993). The court of appeals held that Omar Lopez–Samayoa, M.D. (Dr. Lopez), failed to meet generally accepted standards of medical practice in his care of five patients, and remanded the case to the State Board of Medical Examiners (the Board) for reconsideration of the Board's sanctions against Dr. Lopez. In doing so, the court of appeals

reviewed two separate orders of the Board, the second of which was issued during the pendency of Dr. Lopez's appeal from the first order.

We find that the Board was without jurisdiction to issue a second order. Accordingly, the Board's second order is a nullity and the court of appeals erred in incorporating it as part of the record. We reverse and remand the case with directions.[1]

## I.

Dr. Lopez obtained his license to practice medicine in Colorado on August 10, 1984, and began a private family and surgical practice in Julesburg, Colorado. On October 10, 1990, the Board filed a formal complaint against Dr. Lopez. The complaint alleged that Dr. Lopez engaged in unprofessional conduct by failing to meet generally accepted standards of medical practice in his care of seven patients, in violation of section 12–36–117(1)(p), 5B C.R.S. (1991).[2]

Dr. Lopez answered the complaint, denying all of the Board's allegations. The case was heard before an Administrative Law Judge (ALJ) on April 22–26, April 29–30, and May 2–3, 1991. Dr. Lopez was represented by counsel at the hearing. Both parties called witnesses, offered exhibits, and were permitted to argue the case orally.

On June 10, 1991, the ALJ issued his initial decision, concluding that Dr. Lopez had failed to meet generally accepted standards of medical practice in his care of five patients, thereby subjecting him to discipline by the Board.[3] The ALJ recommended that Dr. Lopez's license be subject to a two-year period of probation, rather than suspension or revocation. In addition, the ALJ recommended that a method be developed to monitor Dr. Lopez's practice. The ALJ also recommended that Dr. Lopez take part in some type of educational program, particularly in the area of interpersonal skills. To that end, the ALJ directed Dr. Lopez to undergo an assessment of his knowledge and medical skills through a program called the Colorado Personalized Education Program for Physicians (CPEPP), and to participate in an educational program developed by CPEPP if the results of the assessment indicated that such a program was appropriate. Finally, the ALJ recommended that Dr. Lopez be required to take other continuing education courses, the content of which would be determined by the Board.[4]

Both Dr. Lopez and the panel of the Board assigned to investigate his case (the inquiry panel)[5] filed exceptions to the initial decision,

1. We granted certiorari on the following two issues:

    [1] Whether the court of appeals erred in holding that the Final Board Order (FBO) of the State Board of Medical Examiners (Board) requiring respondent to become board certified in an area of specialty exceeded the scope of the Board's statutory authority[.]
    [2] Whether the Board had jurisdiction to issue a supplemental order suspending respondent's license to practice while appellate review of the Board's final order was pending. In light of our disposition of this case, we need not address the first issue.

2. Section 12–36–117(1)(p) provides as follows:

    (1) "Unprofessional conduct" as used in this article means:
    . . . .
    (p) An act or omission constituting grossly negligent medical practice or two or more acts or omissions which fail to meet generally accepted standards of medical practice, whether the two or more acts or omissions occur during a single treatment of one patient, during the course of treatment of one patient, or during the treatment of more than one patient[.]

3. The ALJ found that Dr. Lopez's care of the other two patients did not fall below generally accepted standards of medical practice.

4. The ALJ refers to his initial decision as a "Recommended Decision." Nonetheless, the decision of the ALJ is the final agency decision under § 24–4–105(14), 10A C.R.S. (1988), and is subject to judicial review, provided that neither party filed exceptions to the decision within thirty days after service of the initial decision on the parties. *See also Western Colorado Congress v. Colorado Dep't of Health*, 844 P.2d 1264, 1266 (Colo.App.1992). Because both Dr. Lopez and the Board filed exceptions, the initial decision did not become final but was reviewed by the agency. Once the agency issued its decision on review, that decision was then final.

5. The Board is divided into two panels: an inquiry panel, and a hearing panel. The inquiry panel investigates the case, and the hearing panel hears the case. *See* § 12–36–118(1), 5B C.R.S. (1991).

along with supporting briefs.[6] Dr. Lopez argued that the ALJ erred in finding that his care of the five patients fell below generally accepted standards of medical practice, and requested the hearing panel to reverse the ALJ's decision.

The inquiry panel urged the Board to adopt the ALJ's findings of fact and conclusions of law, but argued that the Board should impose greater sanctions than those recommended by the ALJ. Specifically, the inquiry panel recommended that Dr. Lopez's license to practice medicine be suspended for at least ninety days, and that he be required to enroll and participate in CPEPP as a condition to reinstatement of his license. The panel further recommended that the period of suspension be followed by a five-year period of probation, during which Dr. Lopez's practice would be monitored. Finally, the panel recommended that Dr. Lopez be required to obtain a second opinion in all non-emergency Obstetrical and Gynecological (OB/GYN) surgical cases.

After a hearing at which both sides were permitted to orally argue their positions, the Board issued a decision entitled "Final Board Order" (the first order). In the first order, the Board adopted and affirmed the findings of fact and conclusions of law of the ALJ, but rejected the ALJ's recommended disciplinary sanctions. The Board found that the sanctions recommended by the ALJ were insufficient to protect the public interest.

In its first order, the Board imposed a five-year period of probation on Dr. Lopez's license to practice medicine, and delineated the conditions of the probation. As one condition, the Board directed Dr. Lopez to secure a licensed physician to randomly review both the office and hospital practices of Dr. Lopez, evaluate his patient care, and make monthly reports to the Board.

Additionally, the Board agreed with the ALJ that Dr. Lopez would benefit from additional professional education and training. As a second condition to the period of probation, the Board therefore ordered Dr. Lopez to undergo an assessment of his medical

knowledge and skills by CPEPP. The first order provided that, once the CPEPP assessment was complete and the results forwarded to the Board, the Board would issue a "supplemental Order" directing Dr. Lopez to comply with specific educational requirements. In this respect, the first order provided as follows:

> d. Following review of the CPEPP assessment results and the record in the case, the Board will issue a supplemental Order directing Respondent to acquire additional education, training, and skills achievement. The terms and conditions of the Order, insofar as they pertain to education, training, and skills achievement, shall not exceed requirements that Respondent promptly enter a residency training program, approved by the Accreditation Council for Graduate Medical Education ("ACGME") and acceptable to the Board, that Respondent limit his medical practice to that required by the training program until he satisfactorily completes the residency, and that Respondent achieve specialty certification by a board approved by the American Board of Medical Specialties ("ABMS"). The Order may place requirements and limitations upon [R]espondent with respect to the time frame within which he must enter and complete education, training and skills achievement, and may limit or restrict the nature of his medical practice until the required education, training, and skills achievement have been accomplished.

The first order provided that any violation of the order would constitute unprofessional conduct, subjecting Dr. Lopez to further disciplinary action under section 12–36–118, 5B C.R.S. (1991). It also provided that the inquiry panel assigned to his case would monitor Dr. Lopez's compliance with the first order, and reserved the right to pursue additional disciplinary action if Dr. Lopez otherwise violated the Medical Practice Act. Finally, the last paragraph of the first order provided as follows:

---

6. After reviewing the ALJ's initial decision, the hearing panel also decided to review the decision

on its own motion.

This decision becomes final upon mailing. Any party adversely affected or aggrieved by any agency action may commence an action for judicial review before the Court of Appeals within forty-five (45) days after such action becomes effective. Reference Sections 24–4–106(11) and 12–36–119(2), C.R.S.

On May 15, 1992, one week after the first order was mailed, Dr. Lopez filed his notice of intent to seek appellate review, and designated the record to the court of appeals. On the same day, Dr. Lopez filed a motion for a stay of the effective date of the first order, alleging that he would suffer irreparable injury to his medical practice unless the sanctions of the Board were stayed. The court of appeals denied his request on May 22, 1992.

During the pendency of the appeal, on October 7, 1992, the Board purported to issue a "Supplemental Final Board Order" (the second order). In the second order, the Board changed the first order by adding additional conditions on Dr. Lopez's license to practice medicine. First, the Board required Dr. Lopez to begin either a residency training program approved by the Board, or an educational program under CPEPP.[7] Second, the Board required Dr. Lopez to become certified in an area of medical practice recognized by the American Board of Medical Specialties and acceptable to the Board, as a condition for the removal of probation. Third, the Board ruled that Dr. Lopez could no longer perform major surgery, other than to assist a board-certified physician. Finally, the Board ordered Dr. Lopez to confine his OB/GYN practice to routine prenatal care and normal vaginal deliveries, and not to treat high-risk obstetrical patients. As in the first order, the last paragraph in the second order advised Dr. Lopez that the decision of the Board was final upon mailing, and that he could pursue an action for judicial review within forty-five days.

Dr. Lopez did not seek a separate appeal from the second order. In his briefs filed with the court of appeals, Dr. Lopez argued that his care of the five patients was not substandard, and that the sanctions imposed by the Board were an abuse of discretion. He also argued that the Board was without jurisdiction to issue the second order.

On May 20, 1993, the court of appeals affirmed the Board in part, reversed in part, and remanded the case. Regarding Dr. Lopez's jurisdictional argument, the court of appeals held that the filing of the notice of appeal did not divest the Board of jurisdiction to issue the second order. The court of appeals reasoned that the second order was "intended only to detail the procedural aspects of the sanctions which had been imposed in the Board's final order," and that the court of appeals was therefore not precluded from considering the second order and the sanctions included therein.[8] On the merits, the court of appeals found that the ALJ's findings with respect to Dr. Lopez's care of the five patients were supported by the evidence in the record, and affirmed the ALJ's conclusion that the treatment of those patients failed to meet generally accepted standards of medical practice.

Finally, the court of appeals vacated "that part of the order imposing sanctions," and remanded the case for reconsideration of the appropriate sanctions.[9] In its opinion, the court of appeals did not make a distinction between the sanctions contained in the first order and those contained in the second order. Regarding the sanction requiring Dr. Lopez to become board-certified, the court of appeals ruled that the Board was without statutory authority to order Dr. Lopez to become board-certified in an area of specialty because physicians seeking licensure were not subject to such a requirement. The

---

**7.** On May 29 and June 11, 1992, Dr. Lopez underwent an assessment of his capabilities by CPEPP, and a report of CPEPP's findings was forwarded to the Board.

**8.** The Board thereafter apparently treated the first and the second orders as though they were one.

**9.** Despite its ruling vacating the sanctions, the court of appeals concluded that the Board did not abuse its discretion in imposing sanctions that affected Dr. Lopez's surgical practice "insofar as the sanctions are limited to training in decisionmaking and procedures prior to performance of surgery." *Lopez–Samayoa,* 868 P.2d at 1114.

court of appeals also found that the Board abused its discretion when it issued the sanctions without indicating whether it considered the mitigating factors identified by the ALJ.

## II.

We first examine the extent of the Board's authority to regulate the licensure of physicians. The source of that authority is the Colorado Medical Practice Act (the Medical Practice Act), §§ 12–36–101 to –202, 5B C.R.S. (1991 & Supp.1994). In addition to the Board's various other duties under the Medical Practice Act, the Board has authority to issue licenses to qualified applicants, and is responsible for the discipline of licensed physicians who engage in "unprofessional conduct." *See* § 12–36–114, 5B C.R.S. (1991); § 12–36–117, 5B C.R.S. (1991 & Supp.1994); § 12–36–118, 5B C.R.S. (1991). The Board implements its discipline of licensed physicians by placing restrictions on or suspending physicians' licenses to practice medicine.

The Board is required by the Medical Practice Act to follow certain procedures in initiating and pursuing discipline against a physician. Although the Medical Practice Act provides many of the procedures to be followed in licensing disciplinary cases, the Board, as an agency of the State, must additionally comply with the requirements of the State Administrative Procedure Act (APA), §§ 24–4–101 to –108, 10A C.R.S. (1988 & Supp.1994).[10] An understanding of the administrative procedure involved in medical disciplinary cases is helpful in understanding our resolution of this case.

The Board consists of eleven members appointed by the governor, and is comprised of nine physician members and two from the public at large. § 12–36–103(1)(a), 5B C.R.S. (1991). For the purposes of disciplinary proceedings, the Board is divided into two panels: an inquiry panel and a hearing panel. § 12–36–118(1), 5B C.R.S. (1991). The inquiry panel informally investigates charges of physician misconduct, § 12–36–118(4)(a), 5B

C.R.S. (1991), and, upon completion of the investigation, makes a finding that the informal complaint should be dismissed, that the complaint warrants further action short of a formal complaint, or that the facts of the case necessitate the filing of a formal complaint. § 12–36–118(4)(c), 5B C.R.S. (1991).

If the inquiry panel finds that a formal complaint is justified, the complaint is forwarded to the attorney general for preparation of the pleading. § 12–36–118(4)(c)(IV), 5B C.R.S. (1991). The formal complaint is then filed with the Board, and the Board prepares a citation directing the physician to answer the complaint within twenty days. § 12–36–118(5)(b), 5B C.R.S. (1991).

A physician is entitled to a formal hearing once he or she has been served with a formal complaint. § 12–36–118(5)(e), 5B C.R.S. (1991); *see also* § 24–4–105, 10A C.R.S. (1988 & Supp.1994), of the APA. At the hearing, the physician may give testimony in his or her own defense, may offer evidence, and may be represented by counsel. *Id.* All witnesses testifying at the hearing must be sworn, and there must be a complete record made of the proceedings. *Id.*

Generally, formal complaints are heard by the hearing panel of the Board, comprised of the Board members who were not part of the inquiry panel involved in the investigation of that case. *See* § 12–36–118(5)(e). However, the inquiry panel, in its discretion, may refer the matter to an ALJ for hearing. § 12–36–118(1). In that circumstance, the ALJ, after conducting the formal hearing, files an initial decision in the case with the agency. *Id.;* § 24–4–105(14), 10A C.R.S. (1988). The initial decision must contain findings of fact, conclusions of law, and an order of disposition. *Id.*

Within thirty days after service upon the parties of the initial decision, either the physician or the Board may appeal by filing exceptions to the initial decision with the hearing panel. *Id.* If exceptions to the initial decision are filed, the hearing panel reviews the decision. The hearing panel's re-

---

10. The Medical Practice Act often makes specific reference to the applicable portions of the APA. In the event of a conflict between the APA and a statute specific to the agency, the provisions of the specific statute control. § 24–4–107, 10A C.R.S. (1988).

view is limited to those issues presented in the record below, including portions of the transcript designated as part of the record by the parties, the initial decision, and any briefs or exceptions filed. § 24–4–105(15)(a), 10A C.R.S. (Supp.1994). The hearing panel may also permit oral argument. § 12–36–118(1); § 24–4–105(15)(a).

The hearing panel can reverse the ALJ's findings of fact only if the findings are contrary to the weight of the evidence. § 24–4–105(15)(b), 10A C.R.S. (1988).[11] Otherwise, the panel may remand the case to the ALJ, affirm the ALJ's initial decision, or modify the decision or any sanctions included therein. *Id.* Once the hearing panel issues its decision, that decision becomes the final agency action and is subject to judicial review. *State Personnel Bd. v. District Court,* 637 P.2d 333, 336 (Colo.1981).[12]

Any final action of the Board which affects the licensure of the physician may be reviewed directly by the court of appeals. § 12–36–119(2), 5B C.R.S. (1991); *see also* §§ 24–4–106(11), –106(7), 10A C.R.S. (1988).[13] Section 24–4–106(7) of the APA limits the scope of the court of appeals review as follows:

> If [the court of appeals] finds that the agency action is arbitrary or capricious, a denial of statutory right, contrary to constitutional right, power, privilege, or immunity, in excess of statutory jurisdiction, authority, purposes, or limitations, not in accord with the procedures or procedural limitations of this article or as otherwise

required by law, an abuse or clearly unwarranted exercise of discretion, based upon findings of fact that are clearly erroneous on the whole record, unsupported by substantial evidence when the record is considered as a whole, or otherwise contrary to law, then the court shall hold unlawful and set aside the agency action. . . .

Under section 24–4–106(11)(b), 10A C.R.S. (1988), the notice of appeal must be filed with the court of appeals within forty-five days of the final agency decision. Once the appeal has been docketed with the court of appeals, the Colorado rules of appellate procedure apply to the subsequent proceedings. § 24–4–106(11)(d), 10A C.R.S. (1988).

### III.

#### A.

The Board argues that it retained jurisdiction to enter the second order, notwithstanding the fact that Dr. Lopez had previously filed his notice of appeal from the first order. The Board first claims that the first order was a temporary order, and that the second order was in essence the final board order because it outlined the specific sanctions imposed on Dr. Lopez's license.[14] The court of appeals consolidated the two orders, holding that the notice of appeal from the first order did not preclude the Board from issuing an effective second order. We disagree.

The Board's authority to act is circumscribed by the Medical Practice Act and the

---

11. The APA makes a distinction between evidentiary findings of fact and ultimate conclusions of fact. The "contrary to the weight of the evidence" standard applies to the former. § 24–4–105(15)(b). The Board may set aside ultimate conclusions of fact "so long as [its] finding has a reasonable basis in law and is supported by substantial evidence in the record." *State Bd. of Medical Examiners v. McCroskey,* 880 P.2d 1188, 1193 (Colo.1994) (citing *Lee v. State Bd. of Dental Examiners,* 654 P.2d 839, 844 (Colo.1982); *People ex rel. Woodard v. Brown,* 770 P.2d 1373, 1379 (Colo.App.1989)).

12. Under § 12–36–119, 5B C.R.S. (1991), the physician may apply to the Board for reconsideration of its decision. The Board may also reconsider the decision on its own motion. In addition, the Board may postpone or stay the effec-

tive date of the final agency order upon application for such a postponement, if the Board finds that irreparable injury would otherwise result. § 24–4–106(5), 10A C.R.S. (1988).

13. Section 12–36–119(2) provides:

> The action of the board in refusing to grant a license, in taking any disciplinary action as provided in section 12–36–118, or in placing a physician on probation may be reviewed by the court of appeals by appropriate proceedings under section 24–4–106(11), C.R.S.

14. The Board asserts that the first order was in effect a temporary order, even though the Board's counsel at oral argument conceded that the first order, by its own language, was appealable as a final order.

applicable portions of the APA. *See Colorado State Bd. of Medical Examiners v. Weiler,* 157 Colo. 244, 250, 402 P.2d 606, 609 (1965) (holding that the Board's authority to revoke a license comes solely from the Medical Practice Act). These statutes provide the procedural framework for any action of the Board, and provide a process through which physicians adversely affected by a Board decision may challenge the Board's decision. Under section 24–4–106(2), 10A C.R.S. (1988), of the APA, any "final agency action" is subject to judicial review. We have held that an agency's decision on review of the initial decision by the ALJ, except for a remand, is final agency action within the meaning of the APA. *State Personnel Bd. v. District Court,* 637 P.2d 333, 336 (Colo.1981).

■ We conclude that the Board's first order was a final agency action, and that it was therefore appealable under section 24–4–106(11)(b) and section 12–36–119(2). The order itself carried the caption "Final Board Order." It notified Dr. Lopez that the decision became *final* upon mailing, and advised him that he could commence an action for judicial review of the decision within forty-five days. The first order even provided the statutory sections under which Dr. Lopez could pursue his appeal. Dr. Lopez was entitled to rely on those assertions, and the Board cannot circumvent the statutory effect of its first order by mischaracterizing it as a temporary order.

### B.

We must now consider the effect of Dr. Lopez's notice of appeal from the first order. The Board acknowledges the usual rule that the filing of a notice of appeal removes the case from its jurisdiction. The Board urges us, however, to apply an exception to the rule in this case. We decline to do so. We find that the Board did not have jurisdiction to change the first order on appeal by the issuance of the second order.

■ As the Board correctly recognizes, the filing of a notice of appeal is generally an event of jurisdictional significance. *Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 58, 103 S.Ct. 400, 401–02, 74 L.Ed.2d 225

(1982). The notice of appeal removes jurisdiction from the lower court to decide matters involved in the appeal, and confers jurisdiction of the case on the appellate court. *Id.* The rule effectively limits two courts from simultaneously considering the same judgment, and ensures the efficient administration of appeals. *Molitor v. Anderson,* 795 P.2d 266, 268 (Colo.1990); *see also Griggs,* 459 U.S. at 58–59, 103 S.Ct. at 401–03. It is well established that any action taken by a court that is without jurisdiction is void. *Schnier v. District Court,* 696 P.2d 264, 266 (Colo.1985).

In *Colorado Anti–Discrimination Commission v. Continental Air Lines, Inc.,* 143 Colo. 590, 355 P.2d 83 (1960), we applied this principle where an appeal was taken from the final decision of an agency. In that case, the Commission investigated a complaint of racial discrimination by a pilot against Continental Air Lines. The Commission held extensive hearings on the complaint, and thereafter entered its findings of fact and conclusions of law, ruling that the complainant had been discriminated against on the basis of his race. *Id.* at 591–92, 355 P.2d at 84. On Continental's appeal, the district court remanded the case to the agency to determine specific factual findings. Instead, the Commission vacated its previous order, and issued new findings of fact and conclusions of law. When the case returned to the district court, the court held that the Commission's new order was a nullity. *Id.* at 593, 355 P.2d at 85. We agreed. In finding that the Commission had no jurisdiction to vacate its first order, we spoke as follows:

> [T]his court has repeatedly held that an administrative agency is without authority to change, alter or vacate an order while review proceedings are pending in the district court, even as an inferior court is without authority to vacate or modify a judgment after writ of error has issued out of this court directed to such judgment.

*Id.* at 594, 355 P.2d at 86; *see also Marr v. Colorado Dep't of Revenue,* 43 Colo.App. 36, 598 P.2d 155 (1979) (holding that the Department of Revenue was without jurisdiction to stay its order revoking plaintiff's driver's li-

cense once review had been commenced in the district court).

We have also frequently applied the rule where an appeal was taken from an order of a trial court. *See, e.g., Molitor,* 795 P.2d 266 (and cases cited therein at 269). In *Molitor,* we held that the trial court had no jurisdiction to consider a motion to vacate the judgment once a notice of appeal was filed. *Id.* at 270. After a review of our cases, we concluded that a trial court is without jurisdiction to determine any matter "affecting the substance of a judgment once an appeal of that judgment has been perfected." *Id.* at 269.

We recognize that, in some circumstances, the trial court will retain limited jurisdiction even though an appeal of its judgment is pending. In *Muck v. Arapahoe County District Court,* 814 P.2d 869, 872 (Colo.1991), we held that the trial court had jurisdiction to enforce its family-support order even though the court's denial of a motion for a modification of that order was pending appeal. Similarly, in *Schnier v. District Court,* 696 P.2d 264, 267 (Colo.1985), we held that the trial court could entertain a contempt motion for the purpose of enforcing its judgment. *See also Lay v. District Court,* 171 Colo. 472, 468 P.2d 375 (1970) (holding that the trial court is not precluded from executing its judgment, even though an appeal is pending).[15] In those limited circumstances, the trial court has jurisdiction because the proceedings do not involve a challenge to the propriety of the judgment.

Citing *Muck* and *Lay,* the Board argues that it did not lose jurisdiction after the appeal of its first order because it was merely executing its judgment. In the Board's view, the second order was part of the execution of its entire judgment, because the sanctions contained in the second order were within the scope of the first order.

If the Board had acted to merely enforce its first order, we would agree. Once Dr. Lopez's notice of appeal was filed, in the absence of a stay pending appeal, the Board had limited jurisdiction, under *Muck, Schnier,* and *Lay,* to enforce its first order. The Board did not have jurisdiction, under *Anti–Discrimination Commission,* to substantively alter its original order, which is precisely what it did by purporting to impose additional educational requirements in its second order. The sanctions included in the second order were not ministerial in nature, but imposed new and burdensome probationary conditions on Dr. Lopez's license that were not part of the first order.

Nor do we agree that the Board's reference to the second order in the first order somehow merged the two orders. The first order merely advised Dr. Lopez that, once the review of the CPEPP evaluation was complete, the Board *would* impose additional educational requirements which would not exceed requirements that he enter a residency program, that he limit his practice until a completion of the residency, and that he become board-certified in an area of specialty. The actual sanctions regarding additional education and training were imposed in the second order.

However, the Board was without jurisdiction to change the first order once Dr. Lopez filed his notice of appeal from the first order. Once that notice of appeal was filed, the first order was in front of the court of appeals in its entirety, and the Board had no jurisdiction to change the substance of that order by imposing new sanctions. Again, the Board cannot escape the fact that its first order was a final agency action, and that Dr. Lopez's appeal divested the Board of jurisdiction to alter its original order. The fact that Dr. Lopez was warned that a second order was forthcoming does not cure the jurisdictional defect.[16]

---

15. In each of those cases, we noted that, if the judgment had been stayed pending appeal, the trial court would be without even this limited jurisdiction. *Muck,* 814 P.2d at 874; *Schnier,* 696 P.2d at 267; *Lay,* 171 Colo. at 473, 468 P.2d at 375.

16. The Board asserts, in a related argument, that the court of appeals' denial of Dr. Lopez's mo-

tion to stay the proceedings conferred "concurrent" or "joint" jurisdiction on the Board and the court of appeals. The only effect of the court's denial of the stay was that the Board retained limited jurisdiction under *Muck, Schnier,* and *Lay* to enforce its first order, not to issue a new order.

## IV.

We find that the Board was without jurisdiction to impose additional sanctions on Dr. Lopez's license to practice medicine once Dr. Lopez filed a notice of appeal from the Board's first order, a final agency action. The Board's second order was therefore void. The court of appeals, although not approving of the Board's practice, determined that it had jurisdiction to consider both orders. The court of appeals affirmed the Board's conclusion that Dr. Lopez failed to meet generally accepted standards of medical practice and vacated that part of both orders imposing sanctions. Since the court of appeals' opinion combines both orders, and since we hold that the court lacked jurisdiction to consider the second order, we reverse and remand the case to the court of appeals, with instructions that further proceedings are limited to a review of the first order.

MULLARKEY, J., dissents, and SCOTT, J., joins in the dissent.

Justice MULLARKEY dissenting:

The majority in this case holds that a supplemental order issued subsequent to a final board order (FBO) in a disciplinary proceeding must be vacated. The majority holds that because the notice of appeal removes the case from the Board of Medical Examiners' (Board) jurisdiction, the Board can not issue a supplemental order imposing additional discipline.

I agree with the majority that the notice of appeal removes jurisdiction from an administrative agency to impose additional discipline. However, I disagree with the majority in holding that the supplemental order is additional discipline. Rather, the supplemental order is simply implementation of the FBO, which is entirely within the jurisdiction of the Board absent a stay of the proceedings.

The Board initiated disciplinary proceedings against Omar Lopez–Samayoa, M.D., by filing a formal complaint on October 10, 1990. Each count involved separate patients and various treatments which failed to meet generally accepted standards of medical practice, in violation of section 12–36–117(1)(p), 5B

C.R.S. (1991). After a hearing in 1991, an administrative law judge (ALJ) issued an initial decision recommending probation of Lopez because of substandard care given in five of seven cases. The ALJ recommended that Lopez receive two years of probation with practice monitoring and an evaluation by the Colorado Personalized Education Program for Physicians (CPEPP).

In May 1992, the Board entered its FBO, rejecting the ALJ's recommended discipline and putting Lopez's license on probationary status for five years. The FBO required Lopez to obtain a practice monitor and undergo assessment by CPEPP. The Board also expressly stated that additional discipline would be imposed subsequent to a CPEPP evaluation:

> Following review of the CPEPP assessment results and the record in the case, the Board will issue a supplemental Order directing Respondent to acquire additional education, training, and skills achievement. The terms and conditions of the Order, insofar as they pertain to education, training, and skills achievement, shall not exceed requirements that Respondent promptly enter a residency training program, approved by the Accreditation Council for Graduate Medical Education ("ACGME") and acceptable to the Board, that respondent limit his medical practice to that required by the training program until he satisfactorily completes the residency, and that Respondent achieve specialty certification by a board approved by the American Board of Medical Specialties ("ABMS"). The Order may place requirements and limitations upon respondent with respect to the time frame within which he must enter and complete education, training and skills achievement, and may limit or restrict the nature of his medical practice until the required education, training, and skills achievement have been accomplished.[17]

Finally, the FBO included a statement advising Lopez of his right to appeal:

> This decision becomes final upon mailing. Any party adversely affected or aggrieved

---

17. After 54 months, Lopez could petition the Board for termination of the FBO.

by any agency action may commence an action for judicial review before the Court of Appeals within forty-five (45) days after such action becomes effective.

Lopez filed an appeal shortly thereafter. At the same time, he filed a motion for a stay of the effective date of the FBO, alleging that he would suffer irreparable injury to his medical practice unless the sanctions of the Board were stayed. The court of appeals denied his request and allowed the Board to proceed with sanctions.

Five months after the appeal had been docketed in the court of appeals, the Board issued a Supplemental Final Board Order pursuant to the CPEPP assessment requiring:

1. As soon as possible, but in no event later than July 1, 1994, Respondent shall begin participation either in a residency training program approved by the Accreditation Council for Graduate Medical Education and acceptable to the Board or in a focused educational program under the auspices of CPEP[P] and acceptable to the Board.

2. Prior to petitioning the Board for termination of the probationary period required by the final board order dated May 8, 1992, Respondent shall achieve certification by a specialty board recognized by the American Board of Medical Specialties and acceptable to the Board.

3. Until authorized by further order of the Board, Respondent shall not perform major surgery. Respondent may assist at such surgeries, provided that the physician performing the surgery is a board-certified surgeon who possesses privileges to undertake the procedure in the facility where surgery is performed. . . .

4. Until authorized by further order of the Board, Respondent shall confine his obstetrical practice to routine prenatal care and normal vaginal deliveries. Respondent shall not treat high risk obstetrical patients. . . .

Lopez argued that the Board lacked jurisdiction to issue the supplemental order. The majority agrees and holds that the Board did not have jurisdiction "to substantively alter

its original order, which is precisely what it did by purporting to impose additional educational requirements in its second order." Maj. Op. at 19. I disagree and would hold that all of the disciplinary measures taken in the supplemental order were articulated in the first order as disciplinary measures subsequent to the CPEPP assessment. As such, the measures taken by the Board were not additional discipline, but rather implementation of the FBO.

The FBO stated that the Board "*will issue* a supplemental order *directing* " him to acquire additional skills, education and training. The FBO even included a list of possible restrictions, including entering a residency program, limiting Lopez's practice, and requiring specialty certification. None of the sanctions imposed by the supplemental order exceeded the scope of remedial measures articulated in the FBO.

The majority holds that "an administrative agency is without authority to change, alter or vacate an order while review proceedings are pending. . . ." *Colorado Anti–Discrimin. Comm'n v. Continental Air Lines,* 143 Colo. 590, 355 P.2d 83 (1960). While it is true that the administrative agency can not change the order, it may impose any disciplinary sanctions discussed in the FBO.

Any remedial measures taken pursuant to the CPEPP assessment and within the boundaries articulated in the FBO were appropriate disciplinary measures and not additional penalties. By not staying the FBO, the court of appeals permitted the Board to put into place a practice monitor, to conduct random reviews of Lopez through the practice monitor, to conduct a CPEPP assessment, and to have additional educational and skills requirements placed upon him. Under the order, the Board would also monitor the compliance with the terms of the order. If Lopez did not comply with reasonable skill and safety, the Board reserved the right to initiate additional proceedings. Finally, if the Board had reasonable grounds to believe that Lopez was in violation of the Order, they had authority to immediately suspend Lopez's license. All of these actions are disciplinary measures to ensure reasonably safe health care, and any actions taken pursuant

to the FBO would simply be implementation of the FBO, not additions.

Lopez had 45 days to appeal the determination of the FBO. He argues that a logistical difficulty arises. Had he waited for the CPEPP assessment and the discipline from that assessment, he would have had to wait too long for an appeal. I disagree.

Under my interpretation, Lopez was required to appeal the FBO within 45 days of its issuance. However, whenever discipline is imposed on him, he could still appeal the disciplinary measures of the order. Indeed, the supplemental order included the same 45–day appeal provision as the FBO. The nature of the dispute may change because the FBO appeal would involve the validity of the charges, whereas the appeals from the disciplinary measures would more likely focus on the severity of the measures.

Because I believe that the supplemental order is a remedial measure articulated by the FBO, I would not vacate the supplemental order and would affirm the holding of the court of appeals.

I respectfully dissent.

SCOTT, J., joins in the dissent.