**COLORADO STATE BOARD OF
MEDICAL EXAMINERS,**
Petitioner,

v.

**The COLORADO COURT OF APPEALS;**
and Cynthia J. Owens, M.D.,
Respondents.

No. 96SA212.

Supreme Court of Colorado,
En Banc.

July 1, 1996.

K. ErkenBrack, Chief Deputy Attorney General, Merrill Shields, Deputy Attorney General, Linda L. Siderius, First Assistant Attorney General, Matthew E. Norwood, Robert N. Spencer, Assistant Attorneys General, Regulatory Law Section, Denver, for Petitioner.

Yu Stromberg Cleveland, P.C., Frederick Y. Yu, Gregory C. Parham, Denver, for Respondents.

Justice MULLARKEY delivered the Opinion of the Court.

In this original proceeding pursuant to C.A.R. 21, the petitioner, the Colorado State Board of Medical Examiners (the Board), seeks a writ of prohibition to stay an order of the court of appeals. The Board summarily suspended the respondent's license to practice medicine on May 21, 1996, effective May 24, 1996. The suspension was issued pursuant to the State Administrative Procedure Act (the APA), sections 24–4–101 to –108, 10A C.R.S. (1988 & 1995 Supp.), and, in particular, section 24–4–104(4), 10A C.R.S. (1988), of the APA. Thereafter, the respondent, Cynthia J. Owens, M.D. (Owens), filed a motion in the Denver District Court to stay her suspension. On May 24, 1996, the trial court orally granted a temporary restraining order, staying the effective date of the suspension until May 31, 1996, to permit the trial court to undertake the necessary research and analysis on Owens' motion. On May 29, 1996, having reviewed the relevant statutory and case law, the trial court denied Owens' motion for a temporary restraining order. However, the trial court left its previous order in effect until May 31, 1996, at 5:00 p.m.

Owens then sought a stay from the court of appeals pending appeal of the Board's order of suspension. On May 31, 1996, the court of appeals partially granted Owens' motion and stayed suspension of her license until July 1, 1996. The court of appeals provided an accelerated briefing schedule, indicating that it would reconsider the motion when the briefing was completed.

Gale A. Norton, Attorney General, Timothy M. Tymkovich, Solicitor General, Steven

The Board promptly petitioned this court for a writ of prohibition and, on June 10,

1996, we issued a "Rule to Show Cause" why the stay should not be dissolved. We now make the rule absolute and dissolve the stay entered by the court of appeals.

## I.

Owens has been licensed to practice medicine in Colorado since December 13, 1977, and has a family practice in Englewood, Colorado. In September 1991, "Inquiry Panel B" (the Panel) of the Board initiated proceedings by formal complaint against Owens under section 12–36–118(5), 5B C.R.S. (1991 & 1995 Supp.), of the Medical Practice Act (the MPA). Pursuant to the complaint, Owens entered into a Stipulation and Final Agency Order (the 1992 Stipulation) with the Panel. In the 1992 Stipulation, Owens admitted to a previous substance abuse dependence which established a *prima facie* violation of the MPA.[1] *See* § 12–36–117(1)(i), 5B C.R.S (1991). The 1992 Stipulation placed her license on probationary status for five years during which time she agreed to abstain totally from the use of habit-forming drugs and/or controlled substances except for those prescribed by a licensed physician (other than herself). In the event such a substance was prescribed for her, she was required to notify her treatment monitor. Owens also was required to undergo random urine drug screenings. During this probationary period, Owens was temporarily suspended for use of barbiturates. Further, the Panel found that Owens violated the 1992 Stipulation on a number of occasions between March 1993 and March 1995 by her use of prohibited substances as evinced by random urine drug screenings.

Due, among other reasons, to her violations of the 1992 Stipulation, the Panel initiated a disciplinary complaint against Owens.

As a result of that disciplinary action, the Panel and Owens entered into another Stipulation and Final Agency Order on January 18, 1996 (the 1996 Stipulation). The 1996 Stipulation was attributable to evidence that Owens had (1) violated the MPA, sections 12–36–117(1)(p) and (u), 5B C.R.S. (1991 & 1995 Supp.),[2] and (2) failed to comply with the 1992 Stipulation.

The 1996 Stipulation again placed Owens' license on probationary status for five years. As before, the terms of the probation mandated that Owens abstain from the use of alcohol and any habit-forming drug or controlled substance (except by legitimate prescription). In relevant part, the 1996 Stipulation further required that Owens: (1) nominate a new practice monitor within thirty days of becoming aware that the practice monitor had ceased to perform his or her functions under the 1996 Stipulation;[3] (2) receive treatment as determined by the Colorado Physician Health Program, and, pursuant to that requirement, attend scheduled meetings with her treatment monitor; and (3) submit to random urine drug screenings and, before placing herself in a situation that would not permit such testing, to so inform and receive prior approval from her treatment monitor.

On May 21, 1996, the Panel summarily suspended Owens' license to practice pursuant to the APA, section 24–4–104(4), 10A C.R.S. (1988). The order of summary suspension stated that the Panel had "reasonable grounds to believe and finds that [Owens'] pattern of failure to comply with orders of the Board constitutes a violation of section 12–36–117(1)(u), C.R.S. of the Medical Practice Act." The Panel found Owens' violations "deliberate and willful." Further, the Panel found that the "public health, safety and

---

1. Specifically, Owens admitted to excessive use of Percocet (a controlled substance) that led to short-term dependence on an opioid (a synthetic narcotic like an opiate). Owens voluntarily sought assistance for her dependence from the Colorado Physician Health Program.

2. Under the MPA, the definition of "unprofessional conduct" includes "[a]ny act or omission *which fails to meet generally accepted standards* of medical practice," § 12–36–117(1)(p), 5B C.R.S. (1995 Supp.), and "[v]iolation of any valid

board order or any rule or regulation promulgated by the board in conformance with law," § 12–36–117(1)(u), 5B C.R.S. (1991).

3. As distinguished from her "treatment monitor," Owens' "practice monitor" was required to spot check Owens' substantive medical conduct by reviewing Owens' patient charts on a random basis. The treatment monitor was in charge of monitoring Owens' use of drugs and medication and oversaw the urine drug screenings.

welfare imperatively require emergency action pursuant to section 24–4–104(4), C.R.S."

On June 3, 1996, after Owens' summary suspension, the Attorney General (on behalf of the Board and the Panel) issued a "Formal Complaint." The Formal Complaint noted that the Panel found that, between January 18, 1996, and May 21, 1996, Owens had violated the 1996 Stipulation by: (1) failing to timely nominate a practice monitor when she learned that her prior monitor would no longer serve in that capacity (despite a letter reminding her to do so from the Board); (2) using Vicodin, a controlled substance, without prior approval of her treatment monitor; (3) failing to meet with her treatment monitor on more than one occasion; (4) scheduling surgery [4] without the prior approval of her treatment monitor (notification was required for purposes of random urine drug screening); and (5) failing to notify her treatment monitor that she was returning to work after the surgery.[5] The Formal Complaint also charged Owens with substandard medical practice.[6]

The Formal Complaint stated two counts against Owens: (1) that she had repeatedly violated an order of the Board in violation of 12–36–117(1)(u), and (2) that she committed two or more acts or omissions which failed to meet the generally accepted standards of medical practice, in violation of section 12–36–117(1)(p). *See supra* p. 809 n. 2. The Formal Complaint further provided for an informal prehearing conference before the Division of Administrative Hearings in Denver [7] and notified Owens of a hearing before an Administrative Law Judge (ALJ) to determine whether she had violated sections 12–36–117(1)(p) and (u) of the MPA and whether her license should be revoked, or suspended, or she otherwise should be disciplined. She was also notified of her duty to answer the Formal Complaint pursuant to section 24–4–105(2)(b), 10A C.R.S. (1995 Supp.).

## II.

Judicial review of agency actions is governed under section 24–4–106, 10A C.R.S. (1988 & 1995 Supp.), of the APA. Generally, review is available only for final agency actions. § 24–4–106(2), 10A C.R.S. (1988). In this case, no final agency action has yet occurred. *See Colorado State Bd. of Medical Examiners v. Lopez–Samayoa,* 887 P.2d 8, 13 (Colo.1994) ("Once the hearing panel issues its decision, that decision becomes the final agency action and is subject to judicial review."). In very limited circumstances, a court may intervene in an ongoing administrative proceeding. Section 24–4–106(8) provides as follows:

> Upon a showing of irreparable injury, any court of competent jurisdiction may enjoin at any time the conduct of any agency proceeding in which the proceeding itself or the action proposed to be taken therein is clearly beyond the constitutional or statutory jurisdiction or authority of the agency. If the court finds that any proceeding contesting the jurisdiction or authority of the agency is frivolous or brought for the purpose of delay, it shall assess against the plaintiff in such proceeding costs and a

---

4. On April 11, 1996, Owens had cervical spine surgery. According to her surgeon's affidavit, the surgery, "anterior cervical diskectomy and fusion," was performed in order to correct "recurrent cervical disc problems, chronic pain disorder and headaches."

5. Although tardy, Owens did notify her treatment monitor of her surgery by letter on the day of her surgery. He ultimately excused her from availability for random drug screenings and meetings with the treatment monitor during her convalescence.

6. The Formal Complaint stated that, during a delivery of a baby, Owens, a family practice physician, had used (or instructed the resident to use) a suction device for a prolonged period of time without consulting first with an obstetrician. As a result, the baby suffered head trauma.

7. This prehearing conference was held on June 11, 1996. At the conference, Owens sought bifurcation of the two counts brought against her in the Formal Complaint. Specifically, Owens sought an earlier resolution, in a hearing on the merits, of her purported violations of the 1996 Stipulation. The Board and the ALJ were willing to accommodate Owens' request. However, due to the denial of her various additional requests, *e.g.,* that the ALJ issue findings of fact and conclusions of law without entering a final order, Owens withdrew her application for bifurcation and a combined hearing is scheduled to commence on September 4, 1996.

reasonable sum for attorney fees (or an equivalent sum in lieu thereof) incurred by other parties, including the state.

§ 24–10–106(8), 10A C.R.S. (1988). Two requirements are imposed to justify court intervention pursuant to this subsection: a showing of irreparable injury and an agency action which is "clearly beyond the constitutional or statutory jurisdiction or authority of the agency." *Id.*

The Board concedes that Owens has been irreparably harmed by the summary suspension of her license. Hence, the only remaining question is whether the Board has acted outside its statutory jurisdiction such that its actions must be enjoined.

The Board contends that the doctrine of separation of powers precludes the court of appeals' stay because the Board has jurisdiction to summarily suspend a physician's license. Further, the Board asserts that its action in suspending Owens' license was within the scope of its authority and, hence, the court of appeals lacked jurisdiction to stay Owens' suspension.

In contrast, Owens contends that the court of appeals correctly stayed the suspension because the Board is without statutory authority to summarily suspend a license under the MPA and, under the terms of the 1996 Stipulation, the Board cannot act pursuant to the APA, but rather, is confined to disciplinary action under section 12–36–118 of the MPA. Specifically, Owens asserts that, by its failure to provide notice and an opportunity for a hearing, the Board acted outside the scope of its enabling statute. Owens also claims that the Board acted contrary to the 1996 Stipulation which states that Owens' failure to abide by its terms may result in disciplinary action under the MPA. We address first whether there is a conflict between the APA and the MPA.

**8.** Section 24–4–102(3), 10A C.R.S. (1988), defines an "agency" as "any board, bureau, commission, department, institution, division, section, or officer of the state, except those in the legislative branch or judicial branch."

**9.** Section 24–4–107, 10A C.R.S. (1988), provides as follows:
This article applies to every agency of the state having statewide territorial jurisdiction except those in the legislative or judicial branches,

**A.**

The Board is an administrative agency established pursuant to its enabling statute, the MPA, sections 12–36–101 to –202, 5B C.R.S. (1991 & 1995 Supp.). The Board is also an "agency" as defined under the APA. § 24–4–102(3), 10A C.R.S. (1988); [8] *Lopez–Samayoa*, 887 P.2d at 12 (the Board is an agency and, in addition to the MPA, must comply with the requirements of the APA). In cases of conflict between the MPA and APA, the terms of the MPA are controlling. § 24–4–107, 10A C.R.S. (1988); [9] *see also Colorado State Bd. of Medical Examiners v. Reiner*, 786 P.2d 499 (Colo.App.1989). We find there is no conflict here between section 24–4–104(4), 10A C.R.S. (1988), of the APA and section 12–36–118 of the MPA.

Section 24–4–104(4) of the APA provides:

Where the agency has reasonable grounds to believe and finds that the licensee has been guilty of deliberate and willful violation or that the public health, safety, or welfare imperatively requires emergency action and incorporates such findings in its order, it may summarily suspend the license pending proceedings for suspension or revocation which shall be promptly instituted and determined.

Section 12–36–118, 5B C.R.S. (1991 & 1995 Supp.), of the MPA describes the Board's disciplinary function and sets forth a statutory scheme for disciplinary actions. For example, section 12–36–118(4)(a)(I), 5B C.R.S. (1995 Supp.), provides that the physician complained of shall have thirty days to respond to the complaint. Subsections (1) and (5) of section 12–36–118, 5B C.R.S. (1988 & 1995 Supp.), provide for a hearing. Section 12–36–118(9), 5B C.R.S. (1988), addresses the Board's power to require a licensed physician

courts-martial, military commissions, and arbitration and mediation functions. It applies to every other agency to which it is made to apply by specific statutory reference; *but, where there is a conflict between this article and a specific statutory provision relating to a specific agency, such specific statutory provision shall control as to such agency.*
(Emphasis supplied.)

to submit to mental and physical examinations. Notably, section 12–36–118 of the MPA does not reference summary suspensions. Thus, there is no conflict between the MPA and the APA.

We considered the question of whether section 24–4–104(4) of the APA and section 12–36–118 of the MPA conflict in *Colorado State Bd. of Medical Examiners v. District Court*, 191 Colo. 158, 551 P.2d 194 (1976). There, as here, the petitioner-doctor's license was suspended pursuant to section 24–4–104(4), 10 C.R.S. (1973), based on the Board's finding that the petitioner suffered from a severe mental problem and exhibited unprofessional conduct such that the public's health, safety, and welfare were endangered. The petitioner contended that he was denied procedural due process because he was not afforded notice and a hearing before suspension, as mandated under the MPA. We rejected the petitioner's argument, holding that section 24–4–104(4) was proper authority for the Board's action. *Id.* at 160, 551 P.2d at 195; *see also Horwitz v. Colorado State Bd. of Medical Examiners*, 716 P.2d 131, 134 (Colo.App.1985) (section 24–10–104(4) permits Board of Medical Examiners to summarily suspend licenses without prior notification and hearing procedures outlined in the Colorado Podiatry Act and MPA), *appeal dismissed* and *cert. denied*, 479 U.S. 803, 107 S.Ct. 44, 93 L.Ed.2d 7 (1986). We further held that the petitioner's procedural due process rights were not violated given the emergency nature of the situation and noted that "the judiciary should not interfere with an administrative hearing until the administrative agency has reached a final conclusion." *Colorado State Bd. of Medical Examiners*, 191 Colo. at 161, 551 P.2d at 196 (citing cases).

 Recent decisions of the court of appeals, *Stjernholm v. Colorado State Bd. of Chiropractic Examiners*, 865 P.2d 853 (Colo. App.1993), *cert. denied*, No. 93SC422 (Colo. Jan. 10, 1994); *Colorado State Bd. of Medi-*

*cal Examiners v. Reiner*, 786 P.2d 499 (Colo. App.1989), do not conflict either with our holding here or with *Colorado State Bd. of Medical Examiners v. District Court*. Thus, we find that the trial court's order denying the temporary restraining order correctly distinguished these cases and concluded that "(1) the MPA does not limit [the Board's] APA summary suspension authority, and (2) summary suspension followed by a prompt post-deprivation hearing affords procedural due process."

In *Reiner*, the doctor appealed the Board's final order suspending his license to practice as a disciplinary matter under the MPA. The doctor claimed that the Board did not provide him with notice, a hearing, or an opportunity to "comply with all lawful requirements" as mandated under section 24–4–104(3), 10A C.R.S. (1988), of the APA. *Reiner*, 786 P.2d at 501. The court of appeals determined that the Board did not have to comply with section 24–4–104(3) when disciplining a doctor under the MPA. This conclusion was based on a finding that, insofar as the specific provisions of the MPA permitted the Board to take disciplinary action against the doctor by suspending him, the MPA prevailed because its specific provisions conflicted with the general provision of the APA mandating notice and opportunity for a hearing before suspension. *Reiner*, 786 P.2d at 501. *Reiner* involved the construction of a different section of the APA. Hence, *Reiner* is not compelling authority for Owens' position.

Although not raised by the parties, the trial court briefly mentioned *Stjernholm* in denying the temporary restraining order, citing it for the proposition that the Chiropractic Practice Act (CPA) conflicts with section 24–4–104(4) of the APA. In *Stjernholm*, the Board summarily suspended a chiropractor for five months pending disciplinary action based on reasonable grounds to believe that he had willfully and deliberately violated the CPA.[10] *Stjernholm* is not applicable here be-

---

10. In *Stjernholm*, the court of appeals concluded that the summary suspension of the doctor was improper. In the process, it construed the applicable section of the CPA in conjunction with section 24–4–104(4), 10A C.R.S. (1988), and found that "the Chiropractic Act does not provide for summary license suspension for a deliberate and willful violation of the act, but rather limits summary suspension to those situations in which the public health, safety, or welfare re-

cause its construes the CPA rather than the MPA. Moreover the CPA establishes a State Board of Chiropractic Examiners, separate and distinct from the Board of Medical Examiners whose actions are at issue in the present case. *See* § 12–33–103(1), 5A C.R.S. (1991). As already noted above, the MPA does not reference summary suspension or emergency actions at all in section 12–36–118. Thus, there is no conflict or limitation contained in the MPA on the Board's ability to act pursuant to section 24–4–104(4) such that the analysis in *Stjernholm* is analogous.

### B.

■ Owens asserts that the terms of the 1996 Stipulation preclude the Board from acting pursuant to the APA and that the Board is limited to disciplinary actions available under the MPA. We disagree.

Paragraph 22 of the 1996 Stipulation provides:

> This [Stipulation] and all its terms shall have the same force and effect as an order entered after a formal disciplinary hearing pursuant to § 12–36–118(5)(g)(III), C.R.S. *Failure to comply with the terms of this [Stipulation] may be sanctioned by the Inquiry Panel as set forth in § 12–36–118(5)(g)(IV), C.R.S.* This [Stipulation] and all of its terms also constitute a valid board order for purposes of § 12–36–117(1)(u), C.R.S.

(Emphasis supplied.)

We reject Owens' construction of this paragraph for three reasons. First, the underscored language above merely notes that Owens' failure to abide by the terms of the 1996 Stipulation *may* be sanctioned under the MPA, section 12–36–118(5)(g)(IV). Second, as we have already concluded above, the MPA does not foreclose action under section 24–4–104(4) of the APA. Last, both the order

of summary suspension and the Formal Complaint filed by the Attorney General contain allegations of substandard medical care (count two of the Formal Complaint). Thus, in addition to her violations of the 1996 Stipulation, the Board had other grounds on which to suspend Owens' license to practice under section 24–4–104(4).

### III.

Owens raises a number of other arguments in support of the court of appeals' order staying her suspension. First, Owens argues that we do not have jurisdiction under C.A.R. 21 over the court of appeals since that statutory provision addresses district courts and not appellate courts. Second, Owens asserts that the court of appeals had authority to review the trial court's denial of a temporary "injunction" order under C.A.R. 1(a). Third, Owens claims that the Board refused to accommodate her request for an immediate appeal. Last, Owens claims that no reasonable grounds existed for her suspension. We do not find any of these arguments persuasive.

### A.

■ We have jurisdiction to issue remedial and original writs under article VI, section 3 of the Colorado Constitution.[11] C.A.R. 21 provides additional detail on situations in which prohibition may be sought and provides in relevant part:

> (a) This Rule applies only to the original jurisdiction of the Supreme Court to issue writs as provided in Section 3 of Article VI of the Colorado Constitution as amended. (See Rule 106, C.R.C.P., for remedial writs in the district court.) Relief in the nature of prohibition may be sought in the Supreme Court where the district court is

quires emergency action." *Stjernholm*, 865 P.2d at 855. This conclusion was based on the language of the CPA which explicitly stated that no license would be suspended *until after a hearing* " 'except as provided for emergency situations by section 24–4–104.' " *Id.* (quoting § 12–33–119(5), 5A C.R.S. (1991)). We do not express any opinion here on the *court of appeals'* construction of the two statutory provisions before it in *Stjernholm*.

11. Article VI, section 3 of the Colorado Constitution states in relevant part:

> The supreme court shall have the power to issue writs of habeas corpus, mandamus, quo warranto, certiorari, injunction, and such other original and remedial writs as may be provided by rule of court with authority to hear and determine the same....

proceeding without or in excess of its jurisdiction or where the district court has granted or denied change of venue in actions in rem or in actions where the statute prescribes the forum.

. . . .

(d) In all original proceedings brought under this rule, the petition filed shall set forth the nature of the action or threatened action or the refusal to act by the court below or in the inferior tribunal ... and the names and addresses of the parties and their attorneys, if any, in the district court action or in the proceeding in the inferior tribunal. . . .

In all original proceedings brought under this rule ... the clerk of the Supreme Court shall serve a copy of the order to show cause by mail on the respondent district court and other respondents, and on all parties in the district court action or in the proceeding in the inferior tribunal. . . .

In support of her position, Owens cites two of our decisions, *Western Food Plan, Inc. v. District Court,* 198 Colo. 251, 598 P.2d 1038 (1979), and *Intermountain Rural Electric Association v. Public Utilities Commission,* 723 P.2d 142 (Colo.1986). In *Western Food Plan,* the petitioner sought to enjoin an action of the Colorado Attorney General under C.A.R. 21(a) based on a contention that the Attorney General had exceeded his jurisdiction. We refused to entertain the application because the Attorney General is not a judicial officer and does not have "jurisdiction" over certain matters. Consequently, we could not apply the test under C.A.R. 21, *i.e.,* whether the judicial or quasi-judicial tribunal had exceeded its authority. *Western Food Plan,* 198 Colo. at 255, 598 P.2d at 1040. Similarly, in *Intermountain Rural Electric Association,* we held that we could not review the decision of the Public Utilities Com-

mission (PUC) because we lacked original jurisdiction under C.A.R. 21 to "issue a writ of prohibition against an independent regulatory commission such as the PUC." *Intermountain Rural Elec. Ass'n,* 723 P.2d at 143. Thus, both of these cases are factually inapposite since neither presented a decision of a *lower tribunal.*

The court of appeals is a lower tribunal, and, accordingly, we have jurisdiction under C.A.R. 21 to entertain this original proceeding. *See Wiggins v. People,* 199 Colo. 341, 342–43, 608 P.2d 348, 349 (1980) (treating petitioner's motion "as a petition for an original proceeding under C.A.R. 21" and issuing "a rule to show cause why the *court of appeals* should not have granted the petitioner's motion for extension of time and entertained the petition for rehearing") (emphasis supplied). In addition, under article VI, section 2 of the constitution, we have general supervisory powers which we exercise over lower tribunals including the court of appeals.[12]

 Here, the court of appeals acted in excess of its jurisdiction. Under the constitutional principle of separation of powers, neither the trial court nor the court of appeals could take action based on an interim agency order, such as the suspension order presently before us, except in the very narrow confines permitted under section 24–4–106(8) of the APA.

**B.**

 By our disposition of the above issue, concluding that the court of appeals did not have jurisdiction to stay an interim agency order, we need not address Owens' contention that the court of appeals had jurisdiction to entertain an appeal of the trial court's action because it was not a denial of a temporary restraining order but, rather, the denial of a temporary injunction.[13] Thus, we need

---

12. Article VI, section 2 of the Colorado Constitution provides in relevant part that:

(1) The supreme court, except as otherwise provided in this constitution, shall have appellate jurisdiction only, which shall be coextensive with the state, and shall have a general superintending control over all inferior courts, under such regulations and limitations as may be prescribed by law.

13. Under C.A.R. 1(a)(3), the court of appeals can consider an appeal of a grant or denial of a temporary injunction. In contrast, a trial court's denial of a temporary restraining order is not appealable. *See Freshpict Foods, Inc. v. Reynaldo Campos,* 30 Colo.App. 354, 492 P.2d 867 (1971) (C.A.R.1(a)(3) does not include the right to appeal from a temporary restraining order). We note that in the trial court's order denying

not ascertain whether the trial court's action constitutes a denial of a temporary injunction or a temporary restraining order.

## C.

On May 23, 1996, Owens requested an immediate hearing of the Board's summary suspension as required under section 24–4–105(12), 10A C.R.S. (1988). Owens requested a hearing the following day. The Board, after noting that a hearing within twenty-fours hours was not feasible, agreed to schedule a hearing as expeditiously as possible. However, Owens instead initiated an action in the Denver District Court seeking a stay of her suspension. We note that when the parties appeared before the Division of Administrative Hearings to schedule a hearing, Owens was offered dates within two to three weeks of that date. She chose instead a hearing date of September 4, 1996. *See supra* p. 810 n. 7.

We agree with the trial court's finding that "the Board assured [Owens] that it will conduct a prompt post-deprivation hearing in this matter." (Referring to a letter from an Assistant Attorney General to Owens' counsel, dated May 23, 1996.) Thus, Owens does not have a meritorious claim for a procedural due process violation. *See Colorado State Bd. of Medical Examiners v. District Court,* 191 Colo. at 160, 551 P.2d at 196 (prompt post-deprivation hearings satisfy constitutional procedural due process requirements).

## D.

■ Last, Owens raises a number of factual disputes why the Board could not suspend her license. For example, Owens claims that her recent cervical spine surgery and recovery precluded her from continuing her urine screenings as required under the 1996 Stipulation. She also claims that during this time she was unable to interview replacements for her practice monitor who had dropped out of family practice (the applicable medical specialty).

Owens' application, the trial court denominated the application as a motion for a temporary

We do not address the factual disputes raised by Owens. Instead, we find that there was sufficient evidence before the Board—both as to her violations of the 1992 and 1996 Stipulations and as to the allegedly substandard medical care—to warrant the Board's temporary suspension of Owens' license to practice medicine. Moreover, it is not our place to review an interim agency action. *See Colorado State Bd. of Medical Examiners v. District Court,* 191 Colo. at 161, 551 P.2d at 196. Hence, we conclude that the Board did not exceed its jurisdiction or authority when it invoked its powers of suspension under the APA, section 24–4–104(4), 10A C.R.S. (1988).

## IV.

For the foregoing reasons, we make the rule absolute. Accordingly, we dissolve the court of appeals' stay of the Board's suspension of Owens' license to practice medicine.