Marjorie MONEZ and Mary Garcia,
Plaintiffs–Appellants,

v.

Karen REINERTSON, in her official capacity as the Executive Director of the Colorado Department of Health Care Policy and Financing; Michael S. Williams, as Chief Judge of the Division of Administrative Hearings; and Colorado Department of Health Care Policy and Financing, Defendants–Appellees.

No. 04CA2043.

Colorado Court of Appeals,
Div. V.

April 20, 2006.

Solem, Mack & Steinhoff, P.C., R. Eric Solem, Lawrence C. Matten, Englewood, Colorado, for Plaintiffs–Appellants.

John W. Suthers, Attorney General, Anne Baudino Holton, Assistant Attorney General, Lisa Brenner Friemann, Assistant Attorney General, John D. Baird, Assistant Attorney General, Denver, Colorado, for Defendants–Appellees.

Colorado Legal Services, Inc., Joel R. Hayes, Jr., Denver, Colorado, for Amici Curiae A.A.R.P.; Colorado Legal Services, Inc.; ARC of Colorado; and ARC of Denver, Inc.

WEBB, J.

In this Medicaid benefits case, plaintiffs, Marjorie Monez and Mary Garcia, appeal the trial court's judgment granting the motions to dismiss of defendants, the Colorado Department of Health Care Policy and Financing (Department); Karen Reinterson, the executive director of the Department; and Michael S. Williams, chief judge of the division of administrative hearings. We reverse and remand.

According to the complaint, plaintiffs were approved for Home and Community Based Services for the Elderly, Blind, and Disabled (HCBS), a Medicaid program administered by the Department under § 26–4–601, et seq., C.R.S.2005. In 2003, the Colorado Medical Services Board adopted a new screening instrument to determine eligibility for HCBS benefits. Based on reevaluations

using the new instrument, plaintiffs were determined to be ineligible for benefits. Plaintiffs appealed this determination to an administrative law judge (ALJ), during which appeal they continued to receive benefits.

Prior to any hearing before an ALJ, plaintiffs filed this action under 42 U.S.C. § 1983. The trial court found that all plaintiffs' claims were based on 42 U.S.C. § 1396a(a)(3), held that § 1396a(a)(3) does not provide a private right of action, and concluded that it lacked subject matter jurisdiction because plaintiffs had failed to "exhaust their administrative remedies prior to filing suit for district court review of a final agency decision."

## I. Scope of Review

In dismissing plaintiffs' claims, here the trial court cited both C.R.C.P. 12(b)(1) and 12(b)(5).

■ When presented with a C.R.C.P. 12(b)(1) dismissal for lack of subject matter jurisdiction, we review the trial court's factual determinations under a clear error standard and its legal conclusions under a de novo standard. *Egle v. City & County of Denver*, 93 P.3d 609 (Colo.App.2004); *Bazemore v. Colo. State Lottery Div.*, 64 P.3d 876 (Colo.App.2002). Here, the dismissal turns on statutory interpretation, which we review de novo. *Vigil v. Franklin*, 103 P.3d 322 (Colo.2004).

■ A motion to dismiss for failure to state a claim under C.R.C.P. 12(b)(5) must be decided solely on the face of the complaint, with all factual allegations being accepted as true and the court drawing all reasonable inferences therefrom in favor of the plaintiff. *Medina v. State*, 35 P.3d 443 (Colo.2001).

Thus, we apply a C.R.C.P. 12(b)(1) standard to determine whether the trial court lacks jurisdiction and a C.R.C.P. 12(b)(5) standard to determine whether plaintiffs stated a claim on which relief may be granted.

## II. Private Right of Action

■ Plaintiffs first contend the trial court erred in determining that 42 U.S.C. § 1396a(a)(3) does not provide a private right of action which can be asserted under 42 U.S.C. § 1983. We agree.

Section 1983 creates a cause of action against anyone who, acting under color of state law, deprives a person of any "rights, privileges, or immunities secured by the Constitution and laws."

■ Yet, not all federal law violations are actionable under § 1983. To seek redress through § 1983, a plaintiff "must assert the violation of a federal *right,* not merely a violation of federal *law.*" *Blessing v. Freestone,* 520 U.S. 329, 340, 117 S.Ct. 1353, 1359, 137 L.Ed.2d 569 (1997).

In legislation such as the Medicaid Act, which is enacted pursuant to congressional spending power, "the typical remedy for state noncompliance with federally imposed conditions is not a private cause of action for noncompliance but rather action by the Federal Government to terminate funds to the State." *Pennhurst State Sch. & Hosp. v. Halderman,* 451 U.S. 1, 28, 101 S.Ct. 1531, 1545, 67 L.Ed.2d 694 (1981). In some statutes, however, Congress has unambiguously conferred rights that may be vindicated by individual suits brought under § 1983. *Gonzaga Univ. v. Doe,* 536 U.S. 273, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002); *Wilder v. Virginia Hosp. Ass'n,* 496 U.S. 498, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990).

■ In *Blessing v. Freestone, supra,* the Supreme Court set out a three-part test for determining whether a statute confers a federal right enforceable under § 1983:

● Congress must have intended that the provision benefit the plaintiff;

● the right must not be so vague and amorphous that its enforcement would strain judicial competence; and

● the statute must unambiguously impose a binding obligation on the States.

In *Gonzaga University v. Doe, supra,* 536 U.S. at 283, 122 S.Ct. at 2275, the Supreme Court clarified the *Blessing* requirements:

We now reject the notion that our cases permit anything short of an unambiguously conferred right to support a cause of action brought under § 1983. Section 1983 provides a remedy only for the deprivation of

"rights, privileges, or immunities secured by the Constitution and laws" of the United States. Accordingly, it is *rights*, not the broader or vaguer "benefits" or "interests," that may be enforced under the authority of that section.

Further, even where a right has been conferred unambiguously, a private action under § 1983 may be defeated by showing that Congress, either expressly or by providing a comprehensive remedial scheme, intended to preclude individual suits. *Blessing v. Freestone, supra.*

The federal law at issue here, 42 U.S.C. § 1396a(a)(3), provides:

A State plan for medical assistance must ... provide for granting an opportunity for a fair hearing before the State agency to any individual whose claim for medical assistance under the plan is denied or is not acted upon within reasonable promptness.

Since *Gonzaga*, many lower federal courts have held that § 1396a(a)(3) and other subsections of § 1396a(a) confer a private right litigable under § 1983. *See Watson v. Weeks*, 436 F.3d 1152 (9th Cir. 2006)(§ 1396a(a)(10)); *Sabree v. Richman*, 367 F.3d 180 (3d Cir.2004)(§ 1396a(a)(8) & (a)(10)); *S.D. v. Hood*, 391 F.3d 581 (5th Cir.2004)(§ 1396a(a)(10)); *Gean v. Hattaway*, 330 F.3d 758 (6th Cir.2003)(§ 1396a(a)(3)); *Bryson v. Shumway*, 308 F.3d 79 (1st Cir. 2002)(§ 1396a(a)(8)); *Westside Mothers v. Haveman*, 289 F.3d 852 (6th Cir. 2002)(§ 1396a(a)(8)); *Doe 1–13 v. Chiles*, 136 F.3d 709 (11th Cir.1998)(§ 1396a(a)(8)); *Okla. Chapter of Am. Acad. of Pediatrics v. Fogarty*, 366 F.Supp.2d 1050 (N.D.Okla. 2005)(§ 1396a(a)(8)); *Martin v. Taft*, 222 F.Supp.2d 940 (S.D.Ohio 2002) (§ 1396a(a)(8)); *Sobky v. Smoley*, 855 F.Supp. 1123 (E.D.Cal.1994)(§ 1396a(a)(8)). *But see Sanders v. Kan. Dep't of Soc. & Rehabilitation Servs.*, 317 F.Supp.2d 1233 (D.Kan.2004)(no private right of action under § 1396a(a)(8)); *M.A.C. v. Betit*, 284 F.Supp.2d 1298 (D.Utah 2003)(same).

■ While we must follow the United States Supreme Court's interpretation of federal law, we are not bound by decisions of lower federal courts. *Hill v. Thomas*, 973 P.2d 1246 (Colo.1999), *aff'd*, 530 U.S. 703, 120 S.Ct. 2480, 147 L.Ed.2d 597 (2000). Nonetheless, we may look to these decisions for guidance on federal law and follow the analysis that we find persuasive. *See Cmty. Hosp. v. Fail*, 969 P.2d 667 (Colo.1998).

With this body of federal cases in mind, we turn to the three-part *Blessing* test.

## A.

*Gonzaga University v. Doe, supra*, requires a plaintiff to show that Congress unambiguously intended to create an individual right, not merely a violation of federal law or the denial of a benefit or interest, to satisfy the first prong of *Blessing*,

■ To confer rights, Congress must use "'rights-creating' language." *Gonzaga Univ. v. Doe, supra*, 536 U.S. at 287, 122 S.Ct. at 2277. Such language must clearly impart an "individual entitlement" and have an "unmistakable focus on the benefited class." *Gonzaga Univ. v. Doe, supra*, 536 U.S. at 287, 122 S.Ct at 2277 (quoting *Cannon v. Univ. of Chicago*, 441 U.S. 677, 691, 99 S.Ct. 1946, 1955, 60 L.Ed.2d 560 (1979)).

■ In contrast, when a statute "focuse[s] on 'the aggregate services provided by the State,' rather than 'the needs of any particular person,' it confer[s] no individual rights and thus [cannot] be enforced by § 1983." *Gonzaga Univ. v. Doe, supra*, 536 U.S. at 282, 122 S.Ct. at 2274 (quoting *Blessing, supra*, 520 U.S. at 343, 117 S.Ct. at 1361).

As an example of "individually focused" and "rights-creating" language, the Supreme Court in *Gonzaga* discussed Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, and Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, both of which use the wording "[n]o person ... shall ... be subjected to discrimination." The Court compared this language to provisions of the Family Educational Rights and Privacy Act (FERPA), ("[n]o funds shall be made available" to any "educational agency or institution" that has a prohibited "policy or practice"), which it held "speak only in terms of institutional policy and practice, not individual instances of disclosure." *Gonzaga Univ.*

*v. Doe, supra*, 536 U.S. at 288, 122 S.Ct. at 2278. Hence, the Court concluded that the FERPA did not meet the first prong of *Blessing*.

Here, 42 U.S.C. § 1396a(a)(3) says that a state plan for medical assistance "must provide" a fair hearing to "any individual" whose claim for medical assistance under the plan is denied or is not acted upon within reasonable promptness. This language focuses on the individuals benefited rather than on the entity providing the benefits. *See, e.g., Gean v. Hattaway, supra.*

Lower federal courts interpreting § 1396a(a)(10), which similarly provides, "A State plan ... [must] provide ... for making medical assistance available ... to ... all individuals," have also reached this result.

In *Sabree v. Richman, supra*, 367 F.3d at 190, the Third Circuit noted, "[W]e find it difficult, if not impossible, as a linguistic matter, to distinguish the import of the relevant Title XIX language— 'A State plan must provide'—from the 'No person shall' language of Titles VI and IX." And in *S.D. v. Hood, supra*, 391 F.3d at 603, the Fifth Circuit held that § 1396a(a)(10) features "precisely the sort of 'rights-creating' language identified in *Gonzaga* as critical to demonstrating a congressional intent to establish a new right."

We agree with this analysis and adopt it here. Thus, we conclude that § 1396a(a)(3) reveals a Congressional intent to create an individual right that can be asserted under § 1983.

### B.

To satisfy the second prong of *Blessing*, the right cannot be so vague and amorphous that its enforcement would strain judicial competence.

In *Wilder v. Virginia Hospital Ass'n, supra*, 496 U.S. at 509, 110 S.Ct. at 2517, which was decided before *Gonzaga* and *Blessing*, the Supreme Court held that a federal statute creates an enforceable right if "the provision ... was intend[ed] to benefit the putative plaintiff," it reflects a "binding obligation on the governmental unit," and the asserted right is not " 'too vague and amorphous' such that it is 'beyond the competence of the judiciary to enforce.' "

Section 1396a(a)(13)(A), at issue in *Wilder* but later repealed, gave each state the flexibility to adopt any rates it found "reasonable and adequate" for the reimbursement of health care providers. In discussing whether this law was too vague and amorphous, the *Wilder* Court explained:

> That the amendment gives the States substantial discretion in choosing among reasonable methods of calculating rates may affect the standard under which a court reviews whether the rates comply with the amendment, but it does not render the amendment unenforceable by a court. While there may be a range of reasonable rates, there certainly are *some* rates outside that range that no State could ever find to be reasonable and adequate under the Act. Although some knowledge of the hospital industry might be required to evaluate a State's findings with respect to the reasonableness of its rates, such an inquiry is well within the competence of the Judiciary.

*Wilder v. Virginia Hosp. Ass'n, supra*, 496 U.S. at 519–20, 110 S.Ct. at 2523 (footnote omitted).

Similarly, several lower federal courts have found that § 1396a(a)(8) ("medical assistance ... shall be furnished with reasonable promptness to all eligible individuals") satisfies the second *Blessing* factor. *See, e.g., Sabree v. Richman, supra; Bryson v. Shumway, supra; Westside Mothers v. Haveman, supra; Doe 1–13 v. Chiles, supra.*

We are persuaded that if the term "reasonable" is not too vague and amorphous to enforce, then what constitutes a "fair hearing" under § 1396a(a)(3) is also sufficiently specific to be enforceable.

As the Sixth Circuit explained, "given that the judiciary regularly determines whether an individual has been afforded procedural due process rights, a right to a fair hearing is not so vague and amorphous that its enforcement is beyond the abilities of a competent judiciary." *Gean v. Hattaway, supra*, 330 F.3d at 773. This analysis does not strain judicial competence because courts engage in

similar work every day. *See S.D. v. Hood, supra.*

Further, both the Supreme Court in *Wilder* and lower federal courts have concluded that language is not too vague and amorphous when it can be interpreted based on other statutory provisions and regulations promulgated under the statute.

Here, 42 C.F.R. § 431.205 provides the following guidelines for fair hearings under medical assistance programs:

(a) The Medicaid agency must be responsible for maintaining a hearing system that meets the requirements of this subpart.

(b) The State's hearing system must provide for—

(1) A hearing before the agency; or

(2) An evidentiary hearing at the local level, with a right of appeal to a State agency hearing.

(c) The agency may offer local hearings in some political subdivisions and not in others.

(d) The hearing system must meet the due process standards set forth in *Goldberg v. Kelly,* 397 U.S. 254 [90 S.Ct. 1011, 25 L.Ed.2d 287] (1970), and any additional standards specified in this subpart.

Based on these guidelines and the general competence of the judiciary to decide procedural due process matters, we discern little danger of disparate outcomes in litigating what constitutes a "fair hearing" under § 1983 as compared to administrative determination of this issue. *See Rio Grande Cmty. Health Ctr., Inc. v. Rullan,* 397 F.3d 56 (1st Cir.2005)(comparing danger of disparate outcomes between judicial and administrative adjudications in deciding whether a statute is too vague and amorphous to be litigated under § 1983).

Thus, we conclude the "fair hearing" provision of § 1396a(a)(3) satisfies the second prong of *Blessing.*

## C.

To satisfy the third prong of *Blessing,* the statute must unambiguously impose a binding obligation on the states. It must be couched in mandatory terms, such as "shall" and "must," rather than precatory terms.

Here, § 1396a(a)(3) provides that state plans "must ... provide for a ... fair hearing." This phrase is not merely a guideline, but rather a requirement that states must meet under the Medicaid system. *See Sabree v. Richman, supra; Bryson v. Shumway, supra.*

Thus, we conclude § 1396a(a)(3) unambiguously imposes a binding obligation on the States and satisfies the third prong of *Blessing.*

## D.

■ Nevertheless, defendants argue that even if plaintiffs can assert a private right of action under § 1983, § 1396a(a)(3) does not provide a specific remedy of injunctive relief. We are not persuaded.

In *Gonzaga,* the Supreme Court found that plaintiffs suing under § 1983 do not have the burden of showing Congressional intent to create a specific remedy in the underlying statute because " § 1983 generally supplies a remedy for the vindication of rights secured by federal statutes." Thus, "[o]nce a plaintiff demonstrates that a statute confers an individual right, the right is presumptively enforceable by § 1983." *Gonzaga, supra,* 536 U.S. at 284, 122 S.Ct. at 2276.

Section 1983 provides that individuals "shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

Accordingly, we conclude § 1396a(a)(3) can be enforced by seeking an injunction under 42 U.S.C. § 1983.

## III. Procedural Due Process

■ Plaintiffs next contend the trial court erred in dismissing their first claim regarding denial of benefits. We agree.

The Fourteenth Amendment prohibits a state from depriving any person of life, liberty, or property without due process of law. U.S. Const. amend. XIV, § 1.

In *Weaver v. Colorado Department of Social Services,* 791 P.2d 1230, 1232 (Colo.App. 1990), a division of this court held that once a

person is eligible for HCBS benefits, the right to "continued receipt of the same was similar to a 'property' right for purposes of the application of the due process clause of the Fourteenth Amendment." Thus, a person could be deprived of those continued benefits only by means of a procedure that complied with due process. *See generally Goldberg v. Kelly, supra* (due process requires a pre-termination hearing before payments to welfare recipient may be discontinued).

Such a property right cannot be forfeited as a result of arbitrary governmental action. *Weaver v. Colo. Dep't of Soc. Servs., supra* (citing *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974))(the touchstone of due process is protection of the individual against arbitrary action of the government). Hence, the *Weaver* division held that "due process prevents a termination of [HCBS] benefits absent a demonstration of a change in circumstances, or other good cause." *Weaver, supra,* 791 P.2d at 1235.

■ In bringing a due process claim under § 1983, a plaintiff must show that (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Hillside Cmty. Church v. Olson,* 58 P.3d 1021 (Colo.2002).

Here, the trial court dismissed all plaintiffs' claims on the basis that § 1396a(a)(3) did not provide a private action under § 1983. However, we conclude plaintiffs also seek relief under the Due Process Clause, not only under § 1396a(a)(3).

The complaint alleged that the new screening instrument used by defendants to determine eligibility for benefits failed "to demonstrate change in circumstances or other good cause pursuant to *Weaver.*"

Although plaintiffs cite § 1396a(a)(3) ("defendants have, therefore, violated the rights of plaintiffs ... pursuant to 42 U.S.C. § 1396a(a)(3)"), elsewhere in the complaint they request relief under the Fourteenth Amendment. And in their opposition to defendants' motions to dismiss, plaintiffs do not cite § 1396a(a)(3) in their discussion of the first claim. Thus, we examine dismissal of this claim based on broader principles of constitutional due process rather than under the statutory "fair hearing" mandate.

According to the complaint, "no plaintiff has experienced an improvement in her medical or functional condition since she was last evaluated for HCBS eligibility," and "no plaintiff had physician information evaluated prior to the decision to terminate her benefits."

Taking the complaint allegations on their face, we conclude that plaintiffs stated a claim for relief for a procedural due process violation without regard to § 1396a(a)(3). Thus, the trial court erred in dismissing plaintiffs' due process claim under § 1983.

However, because plaintiffs' appeals to the ALJ may have proceeded during this appeal, we express no opinion on plaintiffs' rights if defendants have proved a change in circumstances or other good cause at the administrative hearings.

## IV. Exhaustion of Administrative Remedies

■ Finally, plaintiffs contend the trial court erred in concluding that it lacked subject matter jurisdiction because they did not exhaust their administrative remedies. We agree.

Initially, we note that plaintiffs do not dispute that they failed to exhaust their administrative remedies. Thus, the trial court had no need to hold an evidentiary hearing under C.R.C.P. 12(b)(1).

A plaintiff generally need not exhaust state administrative procedures before instituting an action under § 1983. *Montoya v. City of Colorado Springs,* 770 P.2d 1358 (Colo.App. 1989). But the division in *Montoya* also recognized a possible exception to this rule: "If the deprivation results from the 'random and unauthorized' actions of an individual, rendering a *pre*-deprivation hearing impossible or impracticable, a § 1983 claim will not be entertained, provided the state supplies an adequate *post*-deprivation remedy for the alleged procedural due process violation."

*Montoya v. City of Colorado Springs, supra,* 770 P.2d at 1364.

Here, we need not address this exception because plaintiffs' § 1396a(a)(3) claim alleged deficiencies in the hearing process itself. Similarly, plaintiffs' due process claim alleged that the new screening instrument did not depend on a change in circumstances or other good cause. Therefore, agency review of a decision based on this instrument would not be adequate to address the due process interest recognized in *Weaver v. Department of Social Services, supra.*

Thus, we conclude plaintiffs were not required to exhaust their administrative remedies before bringing either their § 1396a(a)(3) claim or their due process claim under § 1983.

Accordingly, the judgment of dismissal is reversed, and the case is remanded for further proceedings consistent with this opinion.

Judge RUSSEL and Judge HAWTHORNE concur.