24CA1602 Boyd v CDHS 07-03-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1602
City and County of Denver District Court No. 23CV32959
Honorable Jon J. Olafson, Judge

---

Cory Boyd,

Plaintiff-Appellant,

v.

Colorado Department of Human Services, Colorado Department of Health Care Policy and Financing, Adams County Department of Human Services, and Rocky Mountain Human Services,

Defendants-Appellees.

---

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE SCHUTZ
Román, C.J., and Fox, J., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 3, 2025

---

Colorado Legal Services, Claire Dickson, Katherine Gladson, Denver, Colorado, for Plaintiff-Appellant

Philip J. Weiser, Attorney General, Aaron Pratt, Second Assistant Attorney General, Keenan E. Lorenz, Assistant Attorney General, Denver, Colorado, for Defendant-Appellee Colorado Department of Human Services

Philip J. Weiser, Attorney General, Felice Haas, Senior Assistant Attorney General, Brian N. Morrow, Senior Assistant Attorney General, Denver, Colorado, for Defendant-Appellee Colorado Department of Health Care Policy and Financing

Heidi M. Miller, County Attorney, Christina Pettus, Assistant County Attorney, Brighton, Colorado, for Defendant-Appellee Adams County Department of Human Services

Hall & Evans, L.L.C., Alexandria L. Bell, Denver, Colorado, for Defendant-Appellee Rocky Mountain Human Services

¶ 1 Plaintiff, Cory Boyd, appeals the district court's order granting the motion to dismiss his complaint against defendants, Colorado Department of Human Services (Department), Colorado Department of Health Care Policy and Financing (HCPF), Adams County Department of Human Services (Adams County); and Rocky Mountain Human Services (Rocky Mountain). We affirm the district court's judgment.

## I.     Benefits Overview

¶ 2 Under the Colorado Public Assistance Act (the Act), individuals with a disability may qualify for Home Care Allowance (HCA) benefits by establishing that they are "functionally impaired." § 26-2-122.3(1)(b)(III), C.R.S. 2024. The HCA program is administered by the Department. § 26-2-122.3(1)(b), (2); *Barela v. Beye*, 916 P.2d 668, 672 (Colo. App. 1996) ("The [HCA] is a non-entitlement program designed to serve those clients with the lowest functional abilities and the greatest need for paid care."); Dep't of Hum. Servs. Rule 3.570.11.A.3, 9 Code Colo. Regs. 2503-5. HCA recipients receive monthly cash assistance that they may use to obtain home care services such as dressing, hygiene, meal preparation, shopping, travel, and assistance with other daily activities. § 26-2-

122.3(1)(b)(I)(B), (1)(b)(III).  To qualify for HCA benefits, recipients must have a functional impairment and meet certain financial requirements.  § 26-2-122.3(1)(b).  The amount of a recipient's benefits is based on the degree of their functional impairment and their financial circumstances.

¶ 3     The Department contracts with a case management agency to perform the initial assessment of a recipient's functional impairment, and thereafter an annual reassessment of their current functional impairment.  The local county annually reassesses a recipient's income to determine their continuing financial eligibility.

¶ 4     The Act precludes individuals from simultaneously receiving HCA and home- and community-based services (HCBS) benefits, which is a Medicaid program administered by HCPF.  *See* § 26-2-122.3(1)(b)(II) ("Persons eligible to receive home- and community-based services pursuant to [the Act] . . . shall not be eligible for [HCA benefits]."  Thus, if a recipient's annual functional assessment reveals that they are eligible for HCBS benefits, they cannot receive HCA benefits.  *Id.*; Dep't of Hum. Servs. Rule 3.570.11.A.2.b, 9 Code Colo. Regs. 2503-5.  An individual may then apply for HCBS benefits.  HCBS benefits are based on whether an applicant

qualifies for at least one Medicaid waiver, each of which is designed to allow particular categories of impaired individuals to access various types of services.

¶ 5     One of the Medicaid waivers is the Elderly, Blind, and Disabled (EBD) waiver, which provides services for those who are elderly, physically disabled, blind, or HIV positive.  Medicaid benefits are also available for those who qualify for a Community Mental Health Support (CMHS) waiver, which provides services for persons who have been diagnosed with a mental, behavioral, or emotional disorder.  *See* Colo. Dep't of Health Care Pol'y & Fin., *Community Mental Health Supports Waiver (CMHS)*, https://perma.cc/P9K3-FQ96.  Under both the EBD and CMHS waivers, recipients may receive Consumer Directed Attendant Support Services (CDASS), which include personal care for bathing, dressing, or eating; health related activities; and homemaker services, such as housekeeping, meal preparation, and laundry.  *See* Colo. Dep't of Health Care Pol'y & Fin., *Consumer-Directed Attendant Support Services (CDASS)*, https://perma.cc/LSZ9-4D5D.  Unlike the direct cash benefit that HCA provides to recipients, HCBS benefits are paid directly to the service provider.

¶ 6     The applicable regulations recognize that there may be a period of transition between a determination that a person is functionally eligible for HCBS services and formal approval for HCBS benefits under one or more of the waiver programs.  To allow for the completion of the necessary evaluations and transition between these programs, a recipient's eligibility for HCA benefits may be extended for three months from the date they are determined functionally eligible for HCBS benefits so long as the delay in transition is not within the recipient's control.  Dep't of Hum. Servs. Rule 3.570.11.A.2.b, 9 Code Colo. Regs. 2503-5.

## II.     Boyd's Benefits

¶ 7     In September 2021, Boyd qualified to receive HCA benefits in the form of a monthly $472 cash payment.  He used these funds to pay a friend to serve as his caregiver, assist him with household management, and complete the paperwork related to his public benefits and finances.

¶ 8     In August 2022, Rocky Mountain determined that Boyd was no longer eligible for HCA benefits after he twice failed to complete his annual reassessment.  *See* Dep't of Hum. Servs. Rule 3.570.17.C.3, 9 Code Colo. Regs. 2503-5 (the case management

4

agency or county shall deny or discontinue an HCA recipient if a recipient has twice refused to schedule a reassessment within a consecutive thirty-day period).

### III. Procedural History

### A. Administrative Proceedings

¶ 9    In September 2022, Boyd filed an administrative appeal against Adams County and Rocky Mountain challenging the termination of his HCA benefits for failing to schedule a reassessment (first appeal).  The Department's office of appeals set the matter for a hearing in December.  That same month, Rocky Mountain also completed Boyd's assessment and determined that he met the level of care requirements for an HCBS-EBD waiver.

¶ 10    In October, Rocky Mountain notified Boyd that his HCA benefits would terminate by the end of the month.  In response, Boyd filed a second appeal, challenging the effective date of when his HCA benefits would terminate.  The office of appeals opened a second appeal rather than consolidating the two appeals.

¶ 11    To receive HCBS benefits, Boyd was also required to provide a professional medical information page (PMIP) from his service provider to confirm his functional eligibility.  The Department had

5

requested a PMIP from Boyd in August 2022, but he did not submit it until November 2022. In the PMIP, the medical professional confirmed that Boyd had a significant mental health diagnosis and that he qualified for the HCBS-EBD waiver. At that point, Rocky Mountain certified that Boyd was eligible for benefits under the HCBS-EBD waiver.

¶ 12    In December 2022, the hearing for the first appeal took place before an administrative law judge (ALJ). On February 7, 2023, the ALJ in the first appeal issued an initial decision finding that Boyd's "eligibility for Medicaid Medical Assistance is not in dispute in this case." Based on testimony from Melissa Emery, a Rocky Mountain representative, the ALJ found that certain benefits Boyd received under HCA were not available under the HCBS-EBD waiver directly, but that such service may be covered through the CDASS program. Emery also acknowledged that it would take about a month to complete the application and training process required to receive these benefits. To allow sufficient time for that transition, the Department extended Boyd's HCA benefits through the end of December. The ALJ also determined that Boyd "met functional eligibility for HCBS long term care on November 10, 2022, and the

6

three-month grace period provided in § 3.570.11.A was triggered on that date."

¶ 13     During the administrative proceedings, the HCPF office of appeals stated that the Department alone has jurisdiction over HCA matters and instructed the parties to file any exceptions with the Department's office of appeals if they disagreed with the decision regarding Boyd's HCA benefits.  Conversely, the same communication directed the parties to file any exceptions concerning the determination of HCBS benefits with the HCPF office of appeals.

¶ 14     In February 2023, the ALJ in the second appeal dismissed the claim because the matter was resolved in the first appeal.  Boyd filed exceptions with the Department's and the HCPF's offices of appeals.  He did not challenge the ALJ's determination about his HCBS eligibility.  Rather, Boyd's appeal focused on challenging the effective date of the termination of his HCA benefits, whether he qualified for the three-month extension of his HCA benefits, when the three-month extension should commence, and whether a Maintenance of Effort (MOE) payment was due for December 2022.

¶ 15     In March 2023, the Department's office of appeals vacated the order dismissing the second appeal, reinstated it, and issued a remand order on the basis that "the [initial ALJ decision] and record were forwarded only to the Office of Appeals at [HCPF]."  That same month, HCPF remanded the first appeal back to the office of administrative appeals.  In July, the ALJ in the first appeal issued a decision on remand, which was materially similar to the initial decision from February 2023.

¶ 16     In September, the HCPF office of appeals issued a final decision on the issue of when Boyd became eligible for HCBS benefits.  The following month, the HCPF office of appeals issued an amended final agency decision vacating its initial final agency action because HCPF had taken no adverse action against Boyd.  Rather, the HCPF office of appeals concluded, the Department had the sole authority to address issues related to the termination of his HCA benefits.  It appears Boyd did not file any exceptions to HCPF's amended final agency decision.

¶ 17　　In November 2023, however, Boyd filed exceptions to the Department's final agency action.[1]  Therein, he asserted that the HCA appeal process violated various federal laws and the Due Process Clauses of the United States and Colorado Constitutions. *See* U.S. Const. amends. V, XIV; Colo. Const. art. II, § 25.  In support of these arguments, Boyd contended that he is not eligible for HCBS benefits under the EBD waiver.  Relatedly, Boyd asserted that his HCA benefits were terminated on the erroneous premise that he qualified for an HCBS-EBD waiver, but that he has no effective means of challenging the termination of his HCA benefits because HCA does not have jurisdiction to address his HCBS eligibility.

¶ 18　　In January 2024, the Department's office of appeals issued its final agency action affirming the hearing officer's decision that Boyd was no longer eligible to receive HCA benefits once it was determined that he was eligible for HCBS benefits.  The Department's office of appeals also confirmed the extension of

---

[1] As explained more fully in the following section, these exceptions were not filed until five weeks after Boyd filed his complaint in the district court, and a week after he filed his amended complaint, which was the subject of the defendants' motions to dismiss.

Boyd's transition period of HCA and MOE benefits through December 2022.[2] As to Boyd's statutory and constitutional challenges to the HCA administrative process, the Department's office of appeals concluded that it lacked jurisdiction to address such arguments. *See* Dep't of Hum. Servs. Rule 3.587.2.A.2, .C.7, 9 Code Colo. Regs. 2503-5 ("The ALJ has no jurisdiction or authority to determine issues of constitutionality or legality of department rules.").

### B. District Court Proceedings

¶ 19 On October 10, 2023 — after the HCPF office of appeals issued its initial final action but before it amended the final action (and before the Department office of appeals' final action) — Boyd filed the district court complaint at issue on appeal, naming the Department, HCPF, Rocky Mountain, and Adams County as defendants.

¶ 20 Boyd later filed an amended complaint, which sought various forms of declaratory and injunctive relief. Boyd did not file a claim

---

[2] In its answer brief on appeal, Adams County represents that it paid these sums in February 2024. In his reply brief, Boyd does not contest this representation. *See* Dep't of Hum. Servs. Rule 3.531.D, 9 Code Colo. Regs. 2503-5 (addressing MOE benefits).

under C.R.C.P. 106(a)(4) for judicial review of the Department's and HCPF's final decisions. Instead, he asserted claims that he characterized as follows: (1) The defendants violated the HCA statute by terminating his HCA benefits after finding him eligible for HCBS benefits when, he contends, he was not eligible; (2) the Department and HCPF violated the Act by failing to create an administrative means to appeal the termination of HCA benefits when the termination is triggered by a conclusion that the individual is functionally eligible for HCBS benefits and by failing to issue a final agency decision within ninety days; (3) Rocky Mountain and HCPF violated the Act and Medicaid regulations by finding that Boyd was eligible for Medicaid before he finished the PMIP and by failing to establish an administrative appeal process to accommodate issues involving a termination of HCA benefits that is triggered by a finding of eligibility for HCBS benefits; and (4) the Department and HCPF violated his right to due process by failing to establish an appellate process that provides him with a pre-termination hearing and final agency action before the termination of his HCA benefits.

11

¶ 21    While based on different legal theories, each of Boyd's claims is predicated on his assertion that he is not eligible for HCBS benefits, even if he is eligible for HCBS benefits he would not receive all the services he currently obtains using his HCA cash benefit, and he has no meaningful administrative remedy to challenge the conclusion that he is eligible for HCBS benefits.

¶ 22    The defendants moved to dismiss the complaint under C.R.C.P. 12(b)(1) or C.R.C.P. 12(b)(5), claiming that (1) the district court lacked subject matter jurisdiction over the claims due to the absence of a final administrative decision; (2) Boyd lacked standing to bring the complaint because he could not demonstrate an injury in fact after he conceded during the administrative proceedings that he is eligible for HCBS benefits; and (3) Boyd had failed to state a viable claim for relief.

¶ 23    In July, the district court issued an order granting the defendants' motion to dismiss, finding and concluding as follows:

- When Boyd's complaint was filed, there was no final agency action from either the Department's or HCPF's office of appeals, and therefore, the claim was barred

because Boyd failed to exhaust his administrative remedies.

- Boyd failed to allege an injury in fact because under the Act's express language, Boyd's right to receive HCA benefits terminated once he was deemed functionally eligible for HCBS benefits.

- Because Boyd did not have a legally protected interest in receiving HCA benefits, he did not suffer an injury.

## IV. Issues on Appeal

¶ 24 Boyd contends that the district court erred by finding and concluding that he failed to exhaust his administrative remedies. Boyd also challenges the district court's ruling that he lacked standing to bring a claim because he was determined to be functionally eligible for HCBS benefits and was therefore statutorily barred from receiving HCA benefits. We conclude that Boyd's failure to exhaust his administrative remedies deprived the district court of subject matter jurisdiction and therefore address this dispositive issue first.

## V. Exhaustion of Administrative Remedies

### A. The District Court's Ruling

¶ 25 The district court determined that Boyd failed to exhaust his administrative remedies. The court grounded this holding solely on the fact that when Boyd filed his complaint, neither the Department's nor the HCPF's office of appeals had issued final decisions on the two appeals. Specifically, the court held, "While it now appears that the administrative process has been completed, that was not the case at the time of the filing of this dispute. Because this dispute, as filed by Plaintiff Boyd, was filed before the conclusion of the administrative process, this court lacks jurisdiction." Having reached this conclusion, the court did not expressly address other aspects of the parties' exhaustion arguments, including whether Boyd had an adequate administrative remedy to challenge the termination of his HCA benefits or relatedly, whether any of the exceptions to exhaustion apply.

### B. The Parties' Contentions

¶ 26 Boyd argues that the court erred by failing to acknowledge that it could consider the merits of the parties' contentions because the Department's and HCPF's offices of appeals entered final

14

decisions before the district court ruled on the motion to dismiss. Turning then to the broader exhaustion issues, Boyd contends the district court failed to recognize that his claims were subject to one or more of the exhaustion exceptions and were therefore not barred. Boyd argues that the net effect of the agencies' and the court's rulings deprived him of his due process right to an affective administrative remedy to challenge the termination of his HCA benefits.

¶ 27    The defendants take differing positions on the district court's exhaustion holding, but the Department acknowledges that the court may well have erred by applying the doctrine notwithstanding that final agency actions were filed before the dismissal order's entry.

¶ 28    We begin by addressing the legal principles underlying the exhaustion doctrine before addressing the parties' contentions.

C.    Standard of Review

¶ 29    We review a question of law, such as whether the requirement of exhaustion of administrative remedies applies, de novo. *Liberty Bankers Life Ins. Co. v. First Citizens Bank & Tr. Co.*, 2014 COA 151, ¶ 15.  The failure to exhaust administrative remedies deprives a

court of subject matter jurisdiction. *State v. Golden's Concrete Co.*, 962 P.2d 919, 923 (Colo. 1998). Therefore, the issue can be raised at any time, whether by the parties or the court. *See People in Interest of M.S.*, 2017 COA 60, ¶ 13 ("Although this issue was not initially raised by the parties, we may address it sua sponte because it concerns the court's subject matter jurisdiction.").

### D. Exhaustion Legal Principles

¶ 30 "The doctrine of exhaustion of administrative remedies serves as a threshold to judicial review that requires parties in a civil action to pursue available statutory administrative remedies before filing suit in district court." *New Design Constr. Co. v. Hamon Contractors, Inc.*, 215 P.3d 1172, 1178 (Colo. App. 2008) (citing *Golden's*, 962 P.2d at 923). "The doctrine promotes important policy interests, including the efficient use and conservation of judicial resources, by ensuring that courts intervene only if the administrative process fails to provide adequate remedies." *Thomas v. Fed. Deposit Ins. Corp.*, 255 P.3d 1073, 1077 (Colo. 2011).

¶ 31 Inherent in the exhaustion doctrine is the requirement that a party must pursue available administrative remedies to a final agency action. *Grant Bros. Ranch, LLC v. Antero Res. Piceance*

*Corp.*, 2016 COA 178, ¶ 20 ("If 'complete, adequate, and speedy' administrative remedies are available, a party generally must exhaust these remedies before filing suit in district court." (quoting *City & Cnty. of Denver v. United Air Lines, Inc.*, 8 P.3d 1206, 1212 (Colo. 2000))).

¶ 32    There are limited exceptions to the exhaustion doctrine. *United Airlines*, 8 P.3d at 1213. The recognized exceptions include — as relevant here — circumstances in which (1) it is "'clear beyond a reasonable doubt' that further administrative review by the agency would be futile because the agency will not provide the relief requested," *Golden's*, 962 P.2d at 923 (quoting *Colorado v. Veterans Admin.*, 430 F. Supp. 551, 558 (D. Colo. 1977)); (2) the claims involve issues "of law that the agency lacks the authority or capacity to determine," such as constitutional issues, *United Airlines*, 8 P.3d at 1213; (3) the agency lacks jurisdiction to decide the issue, *Horrell v. Dep't of Admin.*, 861 P.2d 1194, 1197 (Colo. 1993); (4) the available administrative remedies are inadequate, *Monez v. Reinertson*, 140 P.3d 242, 249 (Colo. App. 2006); or (5) when the policy reasons for the doctrine would not be served by requiring the party to exhaust all administrative remedies. *id.*

## E. Application

¶ 33 Boyd argues that the district court erred by dismissing his complaint on the grounds that final agency decisions had not yet been entered when the complaint was filed, noting that final agency actions were received before the district court ruled on the motions to dismiss. Adams County disagrees with this contention on the grounds that Boyd conceded his eligibility for HCBS benefits and never properly appealed that determination but does not analyze the impact of the final agency action received after the litigation was filed. HCPF does not address the district court's exhaustion ruling. The Department concedes that the district court may have erred in light of the fact that the final agency decisions were received prior to the entry of the dismissal order, but it does not discuss the breadth of this exception, instead arguing that any error was harmless because Boyd lacked standing to assert a claim once Rocky Mountain determined he was functionally eligible for HCBS benefits.

¶ 34 We agree with Boyd that our appellate courts have held that "a premature petition for judicial review in a district court — like a premature filing of a notice of appeal to this court — does not

warrant the dismissal of the action" absent a showing that a party was prejudiced by the premature filing. *1405 Hotel, LLC v. Colo. Econ. Dev. Comm.*, 2015 COA 127, ¶ 33; *see also Musick v. Woznicki,* 136 P.3d 244, 246 (Colo. 2006) ("[A district] court is not divested of jurisdiction when a party files a premature notice of appeal of a nonfinal judgment."). But, while recognizing the application of this rule in limited circumstances, the supreme court has also cautioned as follows:

> [A]n administrative agency is without authority to change, alter or vacate an order while review proceedings are pending in the district court, even as an inferior court is without authority to vacate or modify a judgment after writ of error has issued out of this court directed to such judgment.

*Colo. State Bd. of Med. Exam'rs v. Lopez-Samayoa*, 887 P.2d 8, 14 (Colo. 1994) (quoting *Colo. Anti-Discrimination Comm. v. Cont'l Air Lines, Inc.*, 355 P.2d 83, 86 (Colo. 1960)). No party acknowledges or discusses these competing principles.

¶ 35     Nevertheless, even if we assume without deciding that the limited exception recognized in *1405 Hotel* applied here because no party has identified any prejudice that they suffered as a consequence of the premature filing, that does not fully answer the

19

question of whether Boyd otherwise exhausted his administrative remedies. We turn now to the broader exhaustion questions.

### 1. Boyd Failed to Timely Dispute His Eligibility for HCBS Benefits

¶ 36  Boyd did not dispute his eligibility for HCBS benefits during the administrative appeal regarding the termination of his HCA benefits. Indeed, the hearing officer found that Boyd's "eligibility for Medicaid Medical Assistance is not in dispute in this case."

¶ 37  Nonetheless, on appeal Boyd declares that it was undisputed in the administrative proceedings that he did not qualify for the HCBS-EBD waiver. In support of this contention, he relies largely on the PMIP application that was signed by his treatment provider. In the PMIP, however, Boyd's treatment provider stated that he qualified for the HCBS-EBD waiver. At the hearing before the ALJ, Boyd's counsel cross-examined Emery about the applicability of the HCBS-EBD waiver, but Boyd provided no countervailing medical evidence or testimony that he did not qualify for the HCBS-EBD waiver. Moreover, Boyd never even addressed his eligibility for the CMHS waiver and CDASS program.

¶ 38  Because the initial decision to terminate Boyd's benefits was based on Rocky Mountain's assessment and the PMIP, Boyd had

the opportunity in his HCA appeal to challenge the factual and legal basis for this conclusion, but he failed to do so.

¶ 39     Boyd also contends that he filed exceptions to this finding, but the record does not support this contention. Having failed to timely object in the administrative proceedings, Boyd was barred from raising the issue in this litigation. *See People ex rel. Woodard v. Brown*, 770 P.2d 1373, 1375 (Colo. App. 1989) (contentions not raised or addressed in administrative proceedings should not be considered on appeal).

¶ 40     Perhaps recognizing this deficiency, on November 13, 2023, Boyd filed a notice of exceptions to the ALJ's decision on remand. But both of Boyd's exceptions, and the decision to which they were directed, were not entered until after Boyd filed this litigation and his amended complaint. Even if the January 2024 final agency action from the Department's office of appeals could be deemed to cure the nonfinality of the decisions issued prior to the filing of the district court action, Boyd's post-litigation exceptions could not be used to add issues that were not raised in the administrative proceedings before he filed the operative complaint in the district court. *See Lopez-Samayoa*, 887 P.2d at 14. Thus, Boyd failed to

timely challenge the Department's conclusion that his HCA benefits terminated when he was found functionally eligible for HCBS benefits.

### 2. Boyd's Failure to Apply for HCBS Benefits

¶ 41    Critically, Boyd does not dispute that he failed to file an application for HCBS benefits before filing his complaint.[3]  Thus, HCPF was unable to make a final determination of whether he qualified for HCBS benefits under the HCBS-EBD waiver, the CMHS waiver, or some other Medicaid waiver that would have authorized him to receive some or all of the services he currently receives using the HCA benefit.  Thus, the agency with expertise on the issue of Boyd's eligibility for HCBS benefits has not yet been afforded the opportunity to determine whether Boyd qualifies for one or more Medicaid waivers, including the HCBS-EBD waiver.

¶ 42    Against this backdrop, we have an administrative determination made by Rocky Mountain, based on its initial assessment of Boyd's functional capacity and the subsequent PMIP

---

[3] At the May 2024 hearing on the motion to dismiss, Boyd did not dispute that he had not applied for any HCBS waiver program.  And at oral argument held on June 3, 2025, the parties agreed that Boyd still has not filed for HCBS benefits.

prepared by Boyd's physician, that Boyd qualifies for the HCBS-EBD waiver. Likewise, we have a final assessment made by Adams County that Boyd is financially eligible for HCBS benefits. In making these determinations, Rocky Mountain and Adams County acted as agents of the Department and HCPF. Thus, we perceive no reason why Boyd could not contemporaneously apply for HCBS benefits — with the corresponding right to appeal any adverse determination made by HCPF — while at the same time pursuing his appeal to the Department challenging the termination of his HCA benefits. That scenario would have allowed the two departments to resolve the controlling questions within their authority: The Department would have decided whether Boyd was eligible for HCA benefits, and HCPF would have decided whether he qualifies for specific HCBS benefits. Instead, Boyd chose to summarily reject the conclusion that he qualifies for HCBS benefits, without applying for HCBS benefits with HCPF, the agency charged with deciding whether he was ultimately qualified for one or more of the HCBS waivers. Thus, we conclude, Boyd failed to exhaust an "available statutory administrative remed[y] before filing suit in district court." *New Design*, 215 P.3d at 1178.

23

¶ 43    We recognize that in the district court and on appeal, Boyd argues that he in fact was not eligible for HCBS benefits, and particularly the HCBS-EBD waiver.  At the same time, the defendants argue that Boyd was eligible for the HCBS-EBD and CMHS waivers.  Moreover, HCPF also notes that many of the home-based services that Boyd currently receives under HCA would also be available to him under the CDASS program, which would be available if Boyd qualifies for either an HCBS-EBD or CMHS waiver.

¶ 44    Boyd argues that he should be afforded a hearing in the district court to resolve any factual disputes regarding his eligibility for the HCBS-EBD and CMHS waivers, and the types of services available to him under these programs.  But that demand contradicts the central purpose of the exhaustion doctrine — a party must first exhaust available remedies in the administrative proceeding before filing a district court action.  *Grant Bros*, ¶ 20 ("The administrative exhaustion doctrine 'enables the agency to make initial determinations on matters within its expertise and to compile a record that is adequate for judicial review' so as to 'prevent piecemeal application of judicial relief and to conserve judicial resources'" (quoting *Golden's*, 962 P.2d at 923)).

## F. The Exhaustion Exceptions

¶ 45    Boyd attempts to justify his failure to exhaust his administrative remedies by arguing that at least one exhaustion exception applies. We therefore consider the various exceptions.

### 1. Administrative Review Would Be Futile

¶ 46    Boyd argues that further administrative proceedings before the Department and HCPF would be futile. More specifically, Boyd argues that he is on the horns of a dilemma in the administrative arena because when he attempts to contest his eligibility for HCBS benefits, the Department or its agent informs him that it is unable to determine whether he qualifies for HCBS benefits because that determination is ultimately made by HCPF. On the other horn, Boyd argues that HCPF has stated that it does not have the authority to review whether he is eligible for HCA benefits. Thus, he contends, the administrative process does not afford him a meaningful opportunity to challenge the conclusion that he is no longer eligible for HCA benefits because he qualifies for HCBS benefits. Boyd argues this violated his rights to due process. *See Goldberg v. Kelly*, 397 U.S. 254, 260 (1970) (due process requires that an agency providing public assistance benefits must afford

25

recipients a pretermination hearing before terminating their right to benefits).

¶ 47 But instead of applying for the HCBS waiver program, Boyd attempted to challenge the termination of his HCA benefits by appealing to HCPF. As HCPF correctly noted, it does not have the authority to determine whether Boyd qualifies for HCA benefits. Boyd could have avoided this situation by timely applying for HCBS benefits. Had he done so, he would have an answer from the appropriate agency, HCPF, determining whether he qualified for HCBS benefits.

¶ 48 We acknowledge that the Department provided Boyd with notice of termination of his HCA benefits based on the determination that he was functionally eligible for HCBS benefits before there was a definitive ruling from HCPF that he in fact qualified for HCBS benefits. Thus, we are not entirely unsympathetic to Boyd's argument. A person receiving Medicaid benefits is generally entitled to a pretermination hearing that complies with due process before such payments can be discontinued. *See Monez*, 140 P.3d at 248 (citing *Goldberg*, 397 U.S. at 260). It creates administrative burdens for a person who

receives notice that they are no longer eligible for HCA benefits to have to appeal that decision while — simultaneously — applying for one of the HCBS waivers before a final determination can be made on their HCBS eligibility. This process creates potential uncertainties and delays while the two agencies finally resolve the eligibility questions.

¶ 49 But the regulatory scheme contemplates and accommodates the potential delays between the time that a person is deemed functionally and financially eligible for HCBS benefits and the date an applicant receives a final decision on their application for an HCBS waiver. Dep't of Hum. Servs. Rule 3.570.11.A.2.b, 9 Code Colo. Regs. 2503-5 ("Clients who are determined eligible for HCBS . . . may remain on HCA for up to three (3) months while they transition to HCBS if the delay in transition is not within the client's control.").

¶ 50 That is what the three-month extension of HCA benefits is intended to remediate. *Id.* This case is illustrative. The initial notification that Boyd was functionally eligible for HCBS benefits and therefore no longer functionally eligible for HCA benefits occurred in September 2022. But the cessation of Boyd's HCA

27

benefits was delayed until December 2022. This period should have afforded adequate time for Boyd to appeal the denial of his HCA benefits, apply for HCBS benefits, and if denied, appeal that decision to HCPF. *Cf. Goldberg*, 397 U.S. at 268 (approving a seven-day period from notice of proposed discontinuance of benefits within which to request a hearing). Indeed, Boyd cites no evidence that contradicts Emery's testimony that he could have completed the eligibility requirements for an HCBS waiver and CDASS assistance in slightly over a month. But for reasons that are unexplained, Boyd never even filed an application for HCBS benefits.

¶ 51     Thus, the perceived dilemma that Boyd complains about was one of his own making and therefore cannot qualify as an exception to the exhaustion doctrine.

2.     Jurisdiction, Authority, Capacity, and Policy

¶ 52     Boyd argues that the Department's and HCPF's statements during the underlying administrative proceedings evidence that any further administrative proceedings would be futile because the Department and HCPF lack the authority, jurisdiction, and capacity to resolve his claims. For the same reasons, he contends that

28

making him pursue further remedies would be against public policy. But Boyd grounds these arguments on statements made by the two agencies in response to the claims and arguments he presented in the administrative proceedings. That is, HCPF stated that it did not have the authority to address the denial of his HCA benefits, and the Department stated that it did not have the authority to decide his contention that he does not qualify for HCBS benefits. These were correct responses to the issues that Boyd presented below. *See* § 26-1-105(3), C.R.S. 2024 ("The [Department] shall be responsible for the administration of human services programs as set forth in part 2 of this article."); § 25.5-1-201(1)(a), C.R.S. 2024 (the HCPF shall administer the Colorado Medical Assistance Act).

¶ 53    As explained, Boyd did not present the appropriate question to the proper agency. A central question is whether Boyd could actually qualify for HCBS benefits. Boyd failed to take the first necessary step to answering that question: He failed to file an application. Had he done so, HCPF would have determined whether he qualified for HCBS benefits. By failing to take this necessary first step, Boyd deprived the appropriate agency of the ability to

meaningfully assess these issues. Because these failures were caused by his inaction, Boyd cannot argue that the administrative process would be futile.

### 3. Constitutional Issues

¶ 54 Finally, Boyd argues that his claims that the administrative requirements violate his due process rights present constitutional issues that the Department and HCPF are not qualified to resolve. *See* Dep't of Hum. Servs. Rule 3.587.2.A.2,. C.7, 9 Code Colo. Regs. 2503-5 ("The ALJ has no jurisdiction or authority to determine issues of constitutionality or legality of department rules."). Boyd is correct that the Department and HCPF lacked the authority to decide these issues. But the constitutional argument Boyd makes — that the appeal process does not provide him an effective forum to address his eligibility for HCBS benefits — is based on the "dilemma" that he created by failing to file an application for HCBS benefits. As explained previously, if Boyd had applied for HCBS benefits with HCPF, we would have an informed decision about whether he does in fact qualify for HCBS benefits, and the nature of the benefits he would obtain thereunder. Thus, exhaustion of Boyd's administrative remedies may well have rendered the claimed

constitutional deficiencies obsolete. Therefore, we conclude that the exception does not apply.

## VI. The Parties' Remaining Contentions

¶ 55 Boyd also claimed that he was prejudiced by the Department's and HCPF's failures to issue a final agency action within ninety days. But on appeal, Boyd does not meaningfully develop this contention in a manner independent of his general objections to the inefficiencies of the appellate process. Therefore, we do not address the issue further. *See Antolovich v. Brown Grp. Retail, Inc.*, 183 P.3d 582, 604 (Colo. App. 2007) ("We will not address these underdeveloped arguments.").

¶ 56 In response to the motions to dismiss, Boyd argued that he was entitled to HCA benefits through January 2023, but such a claim was not asserted in his amended complaint, so we do not address it further. Boyd also notes in passing that he should have received MOE payments, but Boyd does not dispute that MOE payments are discretionary and may not be appealed, or that the Adams County paid his awarded benefits in February 2023. So we also do not address this contention. *See* Dep't of Hum. Servs. Rule

3.531.D, 9 Code Colo. Regs. 2503-5 ("Appeals shall not be allowed for MOE payment adjustments.").

¶ 57 Because we affirm the district court's judgment that Boyd failed to exhaust his administrative remedies — albeit on additional grounds than those relied on by the district court — we need not address the defendants' alternative arguments that Boyd lacked standing to bring the asserted claims or that Boyd's claims failed to state a cognizable claim for relief.

## VII.   Disposition

¶ 58 The judgment is affirmed.

CHIEF JUDGE ROMÁN and JUDGE FOX concur.